**STANDARD DRY KILN COMPANY, a corporation, Appellant,**

v.

**BITUMINOUS FIRE AND MARINE IN-SURANCE COMPANY, a corpora-tion, Appellee.**

**No. 26403.**

United States Court of Appeals, Ninth Circuit.

May 4, 1973.

Rehearing Denied July 2, 1973.

———————◆———————

Walter J. Cosgrave (argued), Frank Lagesen, James H. Gidley, Maguire, Kester & Cosgrave, Portland, Or., for appellant.

J. Anthony Giacomini (argued), Stanley C. Jones, Klamath Falls, Or., for appellee.

Before BROWNING, MOORE* and WRIGHT, Circuit Judges.

MOORE, Circuit Judge:

Plaintiff-appellant, Standard Dry Kiln Company (Standard), appeals from a judgment dismissing its complaint against defendant-appellee Bituminous Fire and Marine Insurance Co. (Bituminous). The case was tried without a jury (Gus J. Solomon, Judge) largely upon facts and exhibits stipulated in a comprehensive pre-trial order, interrogatories and answers thereto, requests for admissions and responses thereto, and résumés of the testimony of various witnesses. Out of all this material the trial court had, and this Court has, to try to piece together such agreement, if any, which may form the basis of such rights as may have been created thereby.[1]

Basic to the factual structure is an insurance policy PC–2–19552 issued under date of January 14, 1966, by Bituminous to Standard. The policy covered Standard's employees with respect to workmen's compensation (W.C.) (Coverage A) and employer's liability ("bodily injury by accident") (Coverage B). Item 3 of the policy limited the scope of Coverage A to Indiana and Tennessee; an All States Endorsement extended the policy's coverage to areas outside Indiana and Tennessee. However, the All States Endorsement was not to apply to some twenty states, including Oregon.

The two employees of Standard, Sullivan and Morrison, whose injuries gave rise to this controversy, were working on a Standard job in Oregon when, on October 11, 1966, they were injured. Under Oregon law they became entitled to and received workmen's compensation awards totalling $15,703.23 collectively. At this point the rights of the parties would appear to be quite clear. The policy covered only Indiana and Tennessee for workmen's compensation; the All States endorsement excluded Oregon; therefore, Bituminous was under no liability whatsoever. The relations, however, between Bituminous and Standard did not remain static. Instead of standing firmly on a no-liability position, Bituminous itself retreated—possibly for business reasons—from any such position.

The trial court and we, in an effort to discover the real intentions of the par-

* The Honorable Leonard P. Moore, Senior United States Circuit Judge, United States Court of Appeals for the Second Circuit, sitting by designation.

1. Judge Solomon's opinion below is unreported. Standard Dry Kiln Co. v. Bituminous Fire & Marine Ins. Co., Civil No. 69–13 (D.Or., filed July 10, 1970).

ties have to rely chiefly upon the many communications which thereafter passed between them.

As stated, policy PC–2–19552 contained under its "Insuring Agreements" two coverages:

Coverage A—Workmen's Compensation: To pay promptly when due all compensation and other benefits required of the insured by the workmen's compensation law.

Coverage B—Employers' Liability: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury by accident or disease, including death at any time resulting therefrom, sustained in the United States of America, its territories or possessions, or Canada by any employee of the insured arising out of and in the course of his employment by the insured either in operations in a state designated in Item 3 of the declarations or in operations necessary or incidental thereto.

Under an exclusion the policy was not to apply to:

(f) under coverage B, to any obligation for which the insured or any carrier as his insurer may be held liable under the workmen's compensation or occupational disease law of a state designated in Item 3 of the declarations, any other workmen's compensation or occupational disease law, any unemployment compensation or disability benefits law, or under any similar law.

On October 13, 1966, two days after the accident Standard wrote to its representative in Klamath Falls, Oregon, the scene of the accident enclosing reports to be filled out for each injury and referring to Bituminous Casualty Corporation as its "Workmen's Compensation carrier" and its policy as number PC–2–19552.

An inter-office memorandum dated November 23, 1966 from Bituminous' Indianapolis office to its Home Office regarding the Morrison and Sullivan claims, posed the question, "[A]re we legally obligated to furnish coverage, or would we want to concede and furnish coverage for the two claims?" (Exh. 59).

From the Home Office then came a Bituminous inter-office memorandum regarding the two Oregon claims. It stated, in effect, that Bituminous' previously asserted position that it was not licensed to issue W.C. insurance in Oregon "was in error"; that the All States Endorsement excluding Oregon was a 1960 form; and that "ordinarily the attachment on that endorsement to the policy effective January 1 would have eliminated Oregon by X-ing it out." The memorandum (Exh. 7) ended with the somewhat critical paragraph, stressed by Standard:

With all this and other factors we feel that it is for the best interest of the Company and the industry to accept coverage on these claims and endorse the policy with Oregon coverage effective January 1, 1966 and pick up the necessary premium.

Now is injected into the situation an entirely different element. If the policy was to be endorsed with Oregon coverage effective January 1, 1966, *and* the necessary premium be paid, it would appear that the language of PC–2–19552 would establish Standard's rights with respect to the Morrison-Sullivan claims.

Bituminous made its position clear by its letter to the President of Standard dated December 22, 1966 (Exh. 8), wherein it stated "we will reimburse you for any payments made by the Oregon Industrial Accident Fund with reference to the [Morrison-Sullivan] cases." This reimbursement was to be "[w]ithout waiving any provisions of our W.C. Policy, PC–2–19552 with your company, * * *." Since Bituminous understood that Standard was responsible to the State (Oregon), the reimbursement was to be made after Standard had paid the State the W.C. payments due.

Within Bituminous' office a "state of confusion" existed. First, there was a

"little confusion" between bituminous' agent (The McLane Company) about Oregon coverage. (Bituminous Inter-Office Memo, Feb. 3, 1967, Exh. 9). Then there was "confusion between the Home Office and the Indianapolis Branch as to whether or not it was permissible for us [Bituminous] to write Oregon workmen's compensation." [2]  *Id.* The doubt and confusion were "finally resolved through Harry Fay [Bituminous] that we [Bituminous] were going to pay these two workmen's compensation claims in Oregon and, evidently, we'll have to take this payroll and apply it to Indiana rates." *Id.* To this memorandum [addressed to Home Office Premium Audit Dept.] was affixed (longhand) the words, "Bill all Oregon payroll as Indiana @ Ind. rates for W.C. & show as Ind. for Liab." (Exh. 9).

Under date of February 22, 1967, an invoice of The McLane Company with reference to "Premium Audit Adjustment of Workmen's Compensation policy for the period 1–1–66 to 1–1–67" on which was endorsed "Workmen's Comp.", showed for PC–2–19552 a net additional premium of $1,218.11 with a statement that "auditor of Bituminous was here to check on Oregon figures." (Exh. 10). There is, therefore, no doubt that Bituminous adjusted its premium for this policy to include Standard's Oregon employees.

Not until October 6, 1967, did Standard receive any notice from an attorney for Morrison and Sullivan that additional claims, the basis of this suit, were being made by them against Standard for their injuries.[3] (Exhs. 27, 28). These letters were forwarded to Bitumi-

nous, Bituminous replied (October 16, 1967) that it had "agreed only to assume the responsibility for the provisions and benefits of the Workmen's Compensation Law. The agreement did not extend to assume responsibility for the penalties provided in the Oregon Law, granting a right of action for damages in cases of employees injured while exployed [sic] by a non-complying employer." (Exh. 62).

On January 24, 1968, and April 2, 1968, summonses and complaints were received in actions, respectively, by Morrison and Sullivan demanding damages for pain, suffering, permanent injury, impairment of future earning capacity, medical expenses, and lost wages. As to each of these actions, Standard advised Bituminous that in view of Bituminous' denial of coverage, it (Standard) was proceeding with the defense of the cases but would hold Bituminous responsible for any judgment together with attorneys' fees and costs of defense (Exhs. 13, 14).

Bituminous' agent, The McLane Company, now re-enters the picture. Christie, who signed PC–2–19552, writing to the president of Dura Containers, Inc. (Standard's parent company), recited the pre-January 1, 1966, situation, and said, "when the loss occurred, I took the position that our 'All States' endorsement should operate and coverage should be afforded. At first the company did not agree with this contention but I was advised later that they would entertain the question and, in all probability, would pay the claim." (Exh. 55). The McLane Company by letter of May 1, 1968, asked Bituminous the question

2. Bituminous Casualty Corp., the parent corporation of Bituminous Fire & Marine Ins. Co., was licensed by the State of Oregon to issue W. C. insurance. (Exh. 58). Bituminous Fire & Marine, the company which actually issued Standard its W. C. policy was licensed by the State of Oregon to write all forms of casualty insurance except W. C. (Exh. 59). Bituminous Casualty reinsured Bituminous Fire & Marine 100% with respect to policy No. PC–2–19552.

3. Under Oregon law an employee injured on the job is normally limited in the damages he can recover to the amount of his W. C. award. (ORS 656.018 (1967)) Where, however, the injured employee's employer is not covered by W. C. insurance (a "non-complying employer"), Oregon law provides that the damages such an employee may recover are not limited to the amount of the W. C. award, but may also include a judgment at common law. (ORS 656.-020, 656.002(15) (1967)).

which Standard now seeks to have us resolve, namely, since it appeared that Bituminous had already "admitted liability under the Compensation Act of Oregon as evidenced by the payments which you have presently made", "why [should not] the coverage "B", Employers' Liability section of coverage, * * * respond in the matter of the lawsuits presently filed." Christie's conclusion was that "perhaps coverage B should respond at this time." (Exh. 17).

This letter evoked a reply from the Bituminous Home Office (Fay) that Bituminous had merely reimbursed Standard for what Standard had reimbursed the Oregon Compensation Fund; that Bituminous had not admitted liability under the policy; and that the Morrison-Sullivan suits "fall within certain penalty provisions of the Oregon Law" and that "the penalty provisions of the Law would not be covered under the policy because of exclusion (d) in the Standard Dry Kiln Workmen's Compensation policy which excluded coverage under coverage B(1) to punitive or exemplary damages. That is the essence of the two suits for damages." [4] (May 6, 1968, Exh. 18).

Judgments in the Morrison-Sullivan suits were obtained against Standard for a total collectively of $41,059. After deducting the $15,703.23 paid by Standard to the Oregon Workmen's Compensation Department, the judgments were satisfied by Standard's paying $25,393.95. To recover this sum, together with attorneys' fees, costs, and expenses, this suit was brought for $35,556.17.

Although the suit is said to arise "as a result of the mutual mistake of the parties, the employer's policy did not designate Oregon under Item 3" and "For reformation of the employer's policy to include Oregon under Item 3", our task is to adjudicate the rights of the parties in the light of all the facts, the policy, PC–2–19552, and Bituminous' actions after its issuance.

Bituminous argues that its commitment of December 22, 1966, to reimburse for Standard's W.C. payments to the Oregon Fund must be limited to that provision under the policy, namely, Coverage A, which covered W.C. payments. It must be remembered that as of this date, December 22nd, there had been no threat or institution of the personal injury suits which did not arise until the following October. Therefore, the letter of that date cannot be construed as an acceptance of only W.C. liability and a rejection of personal injury liability covered by Coverage B. Bituminous further argues that Coverage A and Coverage B are mutually exclusive and that Exclusion (f), *supra*, establishes this. However, Exclusion (f) says no more than that Coverage B does not apply to any obligation under Coverage A. In this case the policy covered the W.C. payments to the Oregon Fund (Coverage A) and the "damages because of bodily injury by accident" under Coverage B. Quite naturally Coverage B did not cover liabilities under Coverage A. Applying both coverages to this case, we have a W.C. liability of $15,703.23 under Coverage A and a personal injury liability of $25,393.95 under Coverage B, obtained by deducting the Coverage A. Liability from that under Coverage B. Thus, there is no double liability or any inconsistency between the two coverages.[5]

---

4. The claim that the "non-complying employer" provisions of Oregon's W. C. law are "penalty" provisions providing "punitive or exemplary" damages has apparently been abandoned by Bituminous on this appeal.

5. Other jurisdictions have reached a similar conclusion with respect to the question: May both Coverage A and Coverage B apply to the same injury in the appropriate circumstances? Each has concluded, as do we, that this question must be answered in the affirmative. *See*, Keys Eng'r Co. v. Boston Ins. Co., 192 F.Supp. 574 (S.D.Fla.1961); Brickley v. Offshore Shipyard, Inc., 270 F. Supp. 985 (E.D.La.1967); cf. Danek v. Hommer, 28 N.J.Super. 68, 100 A.2d 198 (1953) aff'd, 15 N.J. 573, 105 A.2d 677 (1954).

Bituminous states (Brief p. 9) that "Plaintiff's contentions are based upon evidence of efforts by all parties to try to find some coverage for Standard where no coverage existed, all of which efforts were made after the loss occurred." It is true that the efforts were made post-loss, but they were made by Bituminous after the claims had been submitted to them. It was Bituminous which agreed to the W.C. payments; Bituminous which considered Oregon not excluded from the All States exclusion; Bituminous which calculated the premiums under PC–2–19552 as if Oregon were included; and Bituminous which accepted the premiums under PC–2–19552 as if Oregon had been included.

The evidence clearly establishes that Bituminous calculated the premium on the basis of the Oregon payroll and that it was to cover the policy PC–2–19552—not some separate W.C. coverage excluding personal injury liability.

The trial court quite properly concluded that the Comprehensive Liability Policy, CL–2–805648, also issued to Standard by Bituminous, and which contained an exclusion for employee bodily injuries "arising out of and in the course of his employment * * *", did not apply to Standard's claim.

We, therefore, conclude that Bituminous by its post-loss position with respect to policy PC–2–19552 did, in fact decide "for the best interest of the Company and the industry to accept coverage on these claims and endorse the policy with Oregon coverage effective January 1, 1966 and pick up the necessary premium." (Exh. 7). Having picked it up, Bituminous should respond to the obligation created thereby.

The decision of the trial court is reversed with instructions to enter judgment in favor of Standard in the amount of $25,393.95 plus such interest, expenses, costs, and attorneys' fees both on the trial and the appeal as to the court may seem just and proper.