**OMARK INDUSTRIES, INC., an Oregon corporation, Plaintiff,**

v.

**SAFECO INSURANCE COMPANY OF AMERICA, a Washington corporation, Defendant.**

Civ. No. 83–877–PA.

United States District Court,
D. Oregon.

June 12, 1984.

However, the court need not reach this issue in order to render its decision.

Walter H. Sweek, Carl R. Rodrigues, Vergeer, Roehr & Sweek, Portland, Or., for plaintiff.

Donald J. Friedman, Joseph M. VanLeuven, Black, Tremaine, Lankton, Krieger & Schmeer, Portland, Or., for defendant.

## OPINION AND ORDER

PANNER, District Judge.

Plaintiff, Omark Industries, Inc. (Omark), claims that defendant, Safeco Insurance Company of America (Safeco), wrongfully refused Omark's tender of defense of an employment discrimination case filed against it by three former and one current female employees. Omark brings this action to recover its costs of defending and settling the underlying lawsuit. Safeco moves for summary judgment and Omark for partial summary judgment. I grant Safeco's motion. Omark's motion is denied.

## BACKGROUND

Safeco issued to Omark a general liability insurance policy, No. CP765599, for the period December 31, 1976, through December 31, 1979. Coverage up to a one million dollar limit was provided for these three years, which is the period during which the acts complained of in the underlying action were alleged to have taken place. On or about April 10, 1979, a complaint was filed against Omark by Mary Lou Mardis and others in this court. Omark tendered the defense of the *Mardis* action to Safeco. Safeco denied the tender on the ground the policy of insurance did not provide coverage for plaintiffs' claims.

Omark also tendered the defense to the nine other carriers which had extended coverage to Omark during the pertinent time period. The Insurance Company of the State of Pennsylvania (ICSP), whose umbrella policy explicitly provided coverage for discrimination claims, accepted defense of the case under a nonwaiver agreement permitting it and Omark to each reserve their rights under the policy and providing for a fifty-fifty division of defense costs and attorney fees.

On July 30, 1980, the *Mardis* plaintiffs filed an amended complaint. On July 29, 1981, Omark retendered the defense of the action to Safeco. On September 15, 1981, Safeco again declined to accept the tender, on the ground that the general liability policy Omark had purchased did not provide coverage for the *Mardis* amended claims.

The *Mardis* case was settled during July, 1982. On March 28, 1983, Omark sent a demand letter to Safeco asking for reimbursement of the costs of settlement in the amount of $60,000, plus attorney fees. In May, 1983, Omark filed this action against Safeco in the Multnomah County, Oregon, Circuit Court. Safeco removed to this court on June 6, 1983. Safeco moved for summary judgment, and Omark moved for partial summary judgment on the question of liability. I requested supplemental briefing. Order of March 30, 1984.

The underlying case sought class action status with claims based on the Equal Employment Opportunity Act, 42 U.S.C. § 2000e *et seq.*, the Equal Pay Act, 29 U.S.C. § 206, and two Oregon statutes, O.R.S. 659.030 and 652.220. In addition, a claim was made for the common law tort of outrageous conduct. Class certification was denied but the suit was continued pursuant to the allegations of the amended complaint. The plaintiffs' specific factual allegations included the following:

(1) Denying jobs to female applicants and passing them over for promotion because of their sex;

(2) Using psychological testing devices which are not job related nor job validated and which have the purpose and effect of eliminating female applicants;

(3) Paying females less compensation than males in the same or similar jobs and denying to women the salary that is routinely paid to male employees in their grade level;

(4) Denying to female managers the secretarial support given to male managers thereby increasing their workloads and on-the-job pressure and forcing their resignations;

(5) Eliminating job positions in retaliation for complaints;

(6) Refusing to classify appropriate employment positions as exempt;

(7) Subjecting plaintiffs to conditions of employment not imposed on males;

(8) Instructing plaintiffs once they reached mid-managerial positions not to hire females for certain positions;

(9) Denying females, including the plaintiffs, training and educational opportunities granted males;

(10) Degrading females by insisting that "good looking blondes with good legs" be hired for secretarial positions;

(11) Barring women from marketing meetings, office parties, and other functions which would enable them to advance their careers; and

(12) Preselecting males for job openings in disregard of posted guidelines.

The *Mardis* plaintiffs alleged that Omark's action was "willful and malicious or reckless, outrageous in the extreme and was intended to and did cause plaintiffs severe emotional distress of a continuing nature." (*Mardis* amended complaint, p. 10, lines 3–6.)

## DISCUSSION

The primary question in this case is whether the claims alleged in the *Mardis* amended complaint come within the coverage extended by the Safeco general liability insurance policy. The standards governing interpretation of an insurer's duty to defend an insured under an Oregon insurance policy were ably set out by the Oregon court of appeals in *School District No. 1 v. Mission Insurance Company,* 58 Or.App. 692, 650 P.2d 929 (1982), *rev. denied,* 294 Or. 682, 662 P.2d 725 (1983):

The duty to defend an insured under an insurance policy is broader than the duty to pay. The duty to defend arises whenever there is a possibility that the policy provides coverage for the claim made. The rule for determining whether there is a duty to defend was formulated in *Ferguson v. Birmingham Fire Ins.,* 254 Or. 496, 507, 460 P.2d 342 (1969):

"... If the complaint, without amendment, may impose liability for conduct covered by the policy, the insurer is put on notice of the possibility of liability and it has a duty to defend. For example, in an action of trespass brought against the insured, if the complaint alleges a willful entry (in order to support a claim for punitive damages), the plaintiff could, without amending the complaint, recover ordinary damages for a non-willful entry. The insurer, therefore, would have the duty to defend. The innocent trespass may be treated as a 'lesser included offense' by analogy to the criminal law."

*See Ross Island Sand & Gravel Co. v. General Insurance Co. of Amer.,* 472 F.2d 750 (9th Cir.1973) (applying Oregon law); *Casey v. N.W. Security Ins. Co.,* 260 Or. 485, 491 P.2d 208 (1971); 7C Appleman, *Insurance Law and Practice* § 4682 *et seq.* (1979).

Any doubts regarding coverage are resolved in favor of the insured. *Continental Casualty Company v. Reinhardt,* 247 F.Supp. 173 (D.Or.1965), *aff'd,* 358 F.2d 306 (9th Cir.1966). However, an insurer is not required to defend claims which, if proved, would provide no basis for recovery under the policy. 7C Appleman, *Insurance Law and Practice* § 4684.01 (1979). The rules for interpreting insurance contracts are well es-

tablished. The primary objective is to give effect to the intent of the parties. *Denton v. International Health & Life*, 270 Or. 444, 528 P.2d 546 (1974); *Ramco, Inc. v. Pacific Ins.*, 249 Or. 666, 439 P.2d 1002 (1968). If the language is susceptible of more than one construction, the policy is construed most favorably to the insured. *Wallace Co. v. State Auto. Ins. Co.*, 220 Or. 520, 349 P.2d 789 (1960); *Rainey v. Northwest Nat. Casualty Co.*, 44 Or.App. 43, 605 P.2d 294 (1980).

58 Or.App. at 696–97, 650 P.2d at 933.

Oregon courts have not yet decided whether an insurer who has wrongfully refused to defend may later attempt to show that the insured's actions were not within the coverage of the policy. *See* 620 P.2d at 938. This question may arise because "the duty to defend is ... broader than the coverage of the policy." *Id.* The *Mission Insurance* court noted that "[t]here is authority that the insurer is estopped to deny coverage after wrongfully refusing to defend." *Id.* at n. 8 (citations omitted). In considering the present motions, then, I focus initially on whether Safeco had a duty to defend Omark in the *Mardis* action.

I. *Coverage A.*

"Coverage A—Bodily Injury—Except Automobile" of the Safeco policy provides:

[T]he company will pay on behalf of the insured all sums which the insured shall be legally obligated to pay for damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence.

"Bodily injury" under the policy

means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom.

"Occurrence" under the policy

means an event including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

However, the policy contains a number of exclusions. Exclusion (c) provides:

This insurance does not apply to bodily injury to any employee of the insured arising out of and in the course of his employment by the insured....

I concluded on a preliminary basis that severe emotional distress resulting from sex discrimination in employment as alleged in the *Mardis* amended complaint can be "bodily injury, sickness or disease" neither "expected nor intended from the standpoint of the insured." Order of March 30, 1984. It is not necessary that I make a final determination of those questions, however, if coverage is excluded in any event.

Omark argues that the phrase "arising out of an in the course of ... employment" is a term of art designed to exclude only injuries compensable by Oregon's worker's compensation law. Safeco argues that even if the *Mardis* amended complaint can be said to have alleged "bodily injury" resulting from an "occurrence," any injury from sex discrimination in employment obviously arises out of and in the course of employment.

Omark relies on *Federal Rice Drug Company v. Queen Insurance Company of America*, 463 F.2d 626 (3rd Cir.1972). However, *Federal Rice Drug* is distinguishable. Unlike Safeco's Exclusion (c), the exclusions at issue in *Federal Rice Drug* referred explicitly to workmen's compensation coverage. The *Federal Rice Drug* exclusions provided as follows:

This endorsement does not apply:

(f) under coverage A, to any obligation for which the insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

(g) under coverage A, except with respect to liability assumed by the insured under a contract as defined herein, to bodily injury or to sickness, disease or death of any employee of

the insured arising out of and in the course of employment by the insured. 463 F.2d at 628.

The Third Circuit in *Federal Rice Drug* held that Exclusion (f) excluded liability to covered employees electing workmen's compensation, and Exclusion (g) excluded liability to covered employees electing against workmen's compensation. Together, they were intended to exclude only such claims as would have been covered by the standard workmen's compensation and employer's liability policy. 463 F.2d at 630.

Although the holding ignored the clear language of Exclusion (g), the court's interpretation can be understood as based on the fact that the two policy exclusions in question there so closely tracked the two coverages of the standard workmen's compensation and employer's liability policy. That holding, however, is not relevant to an exclusion like Safeco's, which makes no mention whatsoever of worker's compensation. It is difficult to justify reading into Exclusion (c), which does not refer to worker's compensation, the requirement that the underlying employee claim actually be covered under Oregon's worker's compensation law.

The insured in *Federal Rice Drug* had no coverage for the underlying suicide lawsuit. The court was engaged in a not uncommon effort to stretch policy language in order to find coverage. Here, by contrast, Omark bought coverage from the Insurance Company of the State of Pennsylvania for the discrimination claims which were the heart of the underlying lawsuit. ICSP received the premiums, provided a defense, contributed to the settlement, and now seeks to recoup its payments. Omark had no gap in coverage regardless of whether worker's compensation applied.

There are many cases rejecting the *Federal Rice Drug* reasoning. For example, *Spain v. Travelers Insurance Co.*, 332 So.2d 827 (La.1976), involved an insurance policy which excluded:

> bodily injury to any employee of the insured arising out of and in the course of

(1) domestic employment by the insured, if benefits therefor are in whole or in part either payable or required to be provided under any workmen's compensation law, or (2) other employment by the insured ....

*Id.* at 829.

Plaintiff was a legal secretary injured while riding in a car with her employer. The trial court held in favor of the plaintiff, ruling that plaintiff's injuries were not covered by worker's compensation and that the policy provision did not exclude injuries arising out of "other employment" unless benefits were payable to the injured employee under the workmen's compensation law. The Court of Appeals affirmed on the basis that the exclusion was ambiguous. The Louisiana Supreme Court reversed. It stated:

> We cannot subscribe to the rationale of either court below. The exclusion is neither ambiguous as found by the court of appeal nor susceptible to the strained interpretation given it by the trial court. A reading of the exclusion, particularly in light of the numbering used to set off the clauses therein, leaves no doubt as to its meaning: all employees of an insured injured in the scope of their employment are excluded from coverage under the policy unless they are domestic employees who are not covered by workmen's compensation.

*Id.* at 830. The court reached this conclusion in spite of the fact that the plaintiff's claim was not covered by the workmen's compensation law.

Similarly, in *Standard Dry Kiln Co. v. Bituminous Fire & Marine Insurance Co.*, 479 F.2d 427 (9th Cir.1973), plaintiff's worker's compensation/employer's liability policy, as written, did not apply in Oregon. After two of the plaintiff's Oregon employees brought worker's compensation claims for injuries sustained in the course of their employment, the defendant agreed to extend coverage to Oregon to cover the claims. The employees then filed personal injury lawsuits. At issue was whether the defendant had agreed to extend employer's

liability coverage (which would have covered the personal injury claims) as well as worker's compensation coverage. In deciding that issue, the court held that a comprehensive general liability policy, also issued by the defendant to the plaintiff, did not cover the plaintiff's claim because of its exclusion for employee bodily injuries "arising out of and in the course of his employment." *Id.* at 432.

The holding is significant because the personal injury claims were brought outside of worker's compensation. If the employee exclusion applied only to claims covered by worker's compensation, in accordance with the interpretation suggested by Omark, the comprehensive general liability policy would have covered the underlying claims.

*I-L Logging Co. v. Manufacturers & Wholesalers Indemnity Exchange,* 202 Or. 277, 273 P.2d 212, 275 P.2d 226 (1954), involved a two-part employee exclusion somewhat similar to that in *Federal Rice Drug.* The case concerned an accident which occurred when loggers were being transported by their employment to the job site. The plaintiff had elected not to contribute to the worker's compensation fund and had instead secured an employer's liability policy from Lloyds of London. Plaintiff was also covered by a comprehensive general liability policy issued by the defendant, which provided:

> This policy does not apply ... to (a) ... any employee of the Insured while engaged in the employment of the Insured ... or (b) any obligation for which the Insured or any company as his insurer may be held liable under any workmen's compensation law.

202 Or. at 280, 273 P.2d at 212.

The defendant obtained a declaratory decree holding that the underlying claims were excluded by the policy. The Oregon Supreme Court affirmed. It ruled, first, that the phrase "while engaged in the employment of the Insured" has the same meaning as in the workmen's compensation act. It further held that the underlying plaintiffs were engaged in their employ-

ment at the time of the accident and that their claims, therefore, were excluded by subparagraph (a) of the quoted exclusion. The court did not even consider it necessary to address the applicability of subparagraph (b) of the exclusion, which referred to liability under a workmen's compensation law. *Id.* at 304–07, 310, 273 P.2d at 223–24, 275 P.2d at 227–28.

*Eagle Star Insurance Co. v. Deal,* 474 F.2d 1216 (8th Cir.1973), also involved a similar two-part exclusion. The case arose following a fatal plane crash. Eagle Star sought a declaratory judgment that there was no coverage for the resulting claims because of the following exclusion in the policy of insurance:

> This policy does not apply:
> 4. Under Coverages A, B or D to bodily injury, to sickness, disease or death of any employee of the insured while engaged in the duties of his employment or to any obligation for which the insured or any company as his insuror may be held liable under any Workmen's Compensation Law.

*Id.* at 1218 n. 1.

The Eighth Circuit held that the deceased passengers were employees of the insured, engaged in the duties of their employment, and applied the first portion of the employee exclusion clause to deny coverage. It ruled that the lower court's decision to the contrary was clearly erroneous. The court found it unnecessary to consider whether the employees were entitled to workmen's compensation benefits. *Id.* at 1223.

*Harnden v. Continental Insurance Co.,* 612 S.W.2d 392 (Mo.App.1981), applied the same reasoning to a similar exclusion. Plaintiff, a farm employee, was injured by a piece of farm equipment in the course of his employment. Defendant denied coverage, arguing that the following exclusion applied:

> Section II of this policy does not apply:
> ....
> (d) Under Coverage G, to bodily injury to any farm employee, arising out of and in the course of his employment

by the Insured, and under Coverages G and H to any person, including any resident employee or insured farm employee, (1) if the Insured has in effect on the date of the occurrence a policy providing workmen's compensation or occupational disease benefits therefor, or (2) if benefits therefor are in whole or in part either payable or required to be provided under any workmen's compensation or occupational disease law ....

*Id.* at 393 n. 1.

The parties agreed that Harnden was a "farm employee" and was neither a "resident employee" nor an "insured farm employee." Harnden argued that subdivisions (1) and (2) in the quoted exclusion modified both the first and second clauses of the exclusion. If so, his claim would not fall within the exclusion since it was not compensable under workmen's compensation. The court disagreed. It held that Exclusion (d) was not ambiguous. Subsections (1) and (2) modified only the second clause. Coverage was excluded regardless of whether or not plaintiff was entitled to recover workmen's compensation benefits.

In summary, whether the underlying *Mardis* claims actually were covered by worker's compensation is irrelevant to the application of Exclusion (c). *Federal Rice Drug* involved a significantly different exclusion. Other courts, including the Oregon Supreme Court, which have construed similar exclusions, have not imposed a requirement that the underlying claims must be covered under worker's compensation in order to fall within an employee exclusion clause. No court has read a requirement of worker's compensation coverage into an employee exclusion which does not even mention worker's compensation.

■ I conclude Exclusion (c) is unambiguous. Sex discrimination in employment "aris[es] out of and in the course of ... employment ...." Therefore, the *Mardis* amended complaint did not allege claims falling within Coverage A of the general liability policy and Safeco had no duty to defend Omark in the underlying action

based on that coverage. I need not determine whether the *Mardis* claims would have been covered by worker's compensation in light of *McGarrah v. State Accident Insurance Fund Corp.*, 296 Or. 145, 675 P.2d 159 (1983). While defendant argues persuasively that Oregon courts would extend worker's compensation coverage to claims based on sex discrimination in employment, *see* Defendant's Supplemental Brief in Support of Motion for Summary Judgment, pp. 19–22, I am unwilling to take that step where it is not necessary to do so.

## II. *Coverage P.*

Plaintiff contends defendant is liable on an alternate ground, namely, that Coverage P applies. Coverage P of the Safeco general liability policy purchased by Omark provided:

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury (herein called "personal injury") sustained by any person or organization and arising out of one or more of the following offenses committed in the conduct of the named insured's business:

....

Group B—The publication or utterance of a liable or slander or of other defamatory or disparaging material ....

The *Mardis* plaintiffs alleged in both the original and amended complaints that Omark "engaged, and continues to do so, in the practices of degrading females by insisting that good looking blondes with good legs be hired for secretarial positions ...." Omark contends this allegation in the complaint could be regarded as a publication or utterance of defamatory or disparaging material.

■ The gravamen of the *Mardis* plaintiffs' complaint was for employment discrimination because of sex. They did not allege damage to their own reputation or other damage to them flowing from the publication or utterance of any libelous or

disparaging settlement. Therefore, Coverage P is inapplicable. *See Wakehouse Motors, Inc. v. Universal Underwriters Insurance Co.,* 55 Or.App. 733, 639 P.2d 715 (1981); *Horace Mann Insurance Co. v. Maine Teachers Association,* 449 A.2d 358 (Me.1982); *C.O. Morgan Lincoln-Mercury, Inc. v. Vigiland Insurance Co.,* 521 S.W.2d 318 (Tex.Civ.App.1975). Even if the allegation that Omark degraded females by insisting that "good looking blondes with good legs" be hired for secretarial positions constituted the publication or utterance of defamatory or disparaging material concerning females, there was no allegation that any such statement was made to or concerning any of the *Mardis* plaintiffs. In fact, none of the plaintiffs alleged that she was a secretary or had applied for a secretarial position. Safeco had no duty to defend under these circumstances.

## CONCLUSION

Even if severe emotional distress resulting from sex discrimination in employment could be regarded as "bodily injury" caused by an "occurrence" under a general liability policy, coverage was excluded here because that discrimination necessarily arose out of and in the course of employment. In short, Exclusion (c) excludes any coverage under Coverage A. Even if Omark made disparaging comments regarding females, the *Mardis* plaintiffs did not allege the comments were made about them. There is no coverage under Coverage P.

I GRANT summary judgment for defendant and DENY plaintiff's motion for partial summary judgment.

IT IS SO ORDERED.