**PACIFIC INDEMNITY COMPANY**

v.

**LINN, Robert, D.O., Moses, Stephen D., D.O., Robert Linn Medical Associates, Smith, David H., Individually and as Administrator of the Estate of Patricia Smith, Deceased, Silberlicht, Jack, Executor of the Estate of Judith Silberlicht, Deceased, Aetna Insurance Company, Myrletus, William K., Director, Pennsylvania Professional Liability Catastrophe Loss Fund, Pennsylvania Professional Liability Joint Underwriting Association, Chicago Insurance Company, Interstate Fire & Casualty Company**

v.

**NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, Pennsylvania Professional Liability Joint Underwriting Association 3rd Pty. deft.**

**Appeal of AETNA INSURANCE COMPANY, Appellant in No. 84–1444.**

**PACIFIC INDEMNITY COMPANY**

v.

**LINN, Robert, D.O., Moses, Stephen D., D.O., Robert Linn Medical Associates, Smith, David H., Individually and as Administrator of the Estate of Patricia Smith, Deceased, Silberlicht, Jack, Executor of the Estate of Judith Silberlicht, Deceased, Aetna Insurance Company, Myrletus, William K., Director, Pennsylvania Professional Liability Catastrophe Loss Fund, Pennsylvania Professional Liability Joint Underwriting Association, Chicago Insurance Company, Interstate Fire & Casualty Company**

v.

**NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, Pennsylvania Professional Liability Joint Underwriting Association 3rd Pty deft.**

**Appeal of NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, Appellant in No. 84–1445,**

PACIFIC INDEMNITY COMPANY,
Appellant in No. 84-1461,

v.

LINN, Robert, D.O., Moses, Stephen D.,
D.O., Robert Linn Medical Associates,
Smith, David H., Individually and as
Administrator of the Estate of Patricia
Smith, Deceased, Silberlicht, Jack, Ex-
ecutor of the Estate of Judith Silber-
licht, Deceased, Aetna Insurance Com-
pany, Myrletus, William K., Director,
Pennsylvania Professional Liability Ca-
tastrophe Loss Fund, Pennsylvania
Professional Liability Joint Underwrit-
ing Association, Chicago Insurance
Company, Interstate Fire & Casualty
Company

v.

NATIONWIDE MUTUAL FIRE INSUR-
ANCE COMPANY, Pennsylvania Pro-
fessional Liability Joint Underwriting
Association 3rd Pty deft.

PACIFIC INDEMNITY COMPANY

v.

LINN, Robert, D.O., Moses, Stephen D.,
D.O., Robert Linn Medical Associates,
Smith, David H., Individually and as
Administrator of the Estate of Patricia
Smith, Deceased, Silberlicht, Jack, Ex-
ecutor of the Estate of Judith Silber-
licht, Deceased, Aetna Insurance Com-
pany, Myrletus, William K., Director,
Pennsylvania Professional Liability Ca-
tastrophe Loss Fund, Pennsylvania
Professional Liability Joint Underwrit-
ing Association, Chicago Insurance
Company, Interstate Fire & Casualty
Company

v.

NATIONWIDE MUTUAL FIRE INSUR-
ANCE COMPANY, Pennsylvania Pro-
fessional Liability Joint Underwriting
Association 3rd Pty deft.

Appeal of PENNSYLVANIA PROFES-
SIONAL LIABILITY JOINT
UNDERWRITING ASSOCIATION,
Appellant in No. 84-1462.
Nos. 84-1444, 84-1445, 84-1461,
and 84-1462.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6),
June 17, 1985.

Decided June 27, 1985.

Charles W. Craven, Marshall, Dennehey, Warner, Coleman & Goggin, Philadelphia, Pa., for appellant in No. 84–1444 Aetna Ins. Co.

Joseph T. Bodell, Jr., Kevin Canavan, Swartz, Campbell & Detweiler, Philadelphia, Pa., Counsel for appellant in No. 84–1445 Nationwide Mut. Fire Ins. Co.

Tina L. Nugent, J. Grant McCabe, III, Henry H. Janssen, Rawle & Henderson, Philadelphia, Pa., for appellant in No. 84–1461 Pacific Indem. Co.

Jay J. Lambert, Beatrice O'Donnell, Duane, Morris & Hecksher, Philadelphia, Pa., for appellant in No. 84–1462 Pa. Professional Liability Joint Underwriting Ass'n.

Jay S. Ruder, Walter W. Rabin, Meltzer & Schiffrin, Philadelphia, Pa., for appellees, Robert Linn, D.O., Stephen D. Moses, D.O., and Robert Linn Medical Associates.

John A. Guernsey, DeStefano & Guernsey, Philadelphia, Pa., for appellees, Inter-

state Fire and Cas. Co. and Chicago Ins. Co.

Before ALDISERT, Chief Judge, GIB-BONS, Circuit Judge, and DIAMOND, District Judge.*

## OPINION OF THE COURT

ALDISERT, Chief Judge.

These complex appeals arise from a declaratory judgment action brought by Pacific Indemnity Company (Pacific) to determine which insurance company, if any, must defend and indemnify claims against Robert Linn, D.O., which have been or may be asserted on behalf of persons who read Dr. Linn's book, *The Last Chance Diet,* followed the diet program recommended in the book, and consequently suffered personal injury or death. We are called upon to apply general principles of Pennsylvania insurance law in this diversity action to claims of malpractice, professional negligence, breach of warranty, and products liability brought by readers of the physician's book (hereinafter referred to as bookreader claims). We affirm the district court in all respects. 590 F.Supp. 643.

### I.

Dr. Linn, an osteopath, specializes in nutritional and family medicine. In 1976, he began writing *The Last Chance Diet,* a program for a protein-sparing fast diet. The book repeatedly emphasized that the diet was a medical program. Persons following the diet were directed to do so only under medical supervision. Since the book was published, at least eleven lawsuits have been filed against Dr. Linn by persons who read the book but had no personal consultation, examination or treatment by Dr. Linn or his associates. As notice of each of these bookreader claims was given to the insurers, Pacific agreed, under a reservation of rights, to defend Dr. Linn on those cases that fell within its policy period. The other insurers—Aetna Insurance Company (Aetna), Pennsylvania Professional Liability Catastrophe Loss Fund (CATfund), Pennsylvania Professional Liability Joint Underwriting Association (JUA), Chicago Insurance Company (Chicago), Interstate Fire and Casualty Company (Interstate) and Nationwide Mutual Fire Insurance Company (Nationwide)—refused to defend Dr. Linn against any of the claims.

Pacific brought its declaratory judgment action in 1979. In 1981, the district court ruled on various summary judgment motions, denying certification of a nationwide class of bookreader claimants, holding Pennsylvania law applicable, dismissing all claims against Chicago, and resolving issues as to the duties of the insurers to defend against specific bookreader claims. The district court did not reach the duty to indemnify at that time because it did not consider that issue ripe for determination. After a trial in December 1981, the district court resolved the remaining duty to defend issues, which were concerned primarily with the applicability of certain policy exclusions. Aetna, Nationwide and Pacific appealed to this court. We dismissed the interlocutory appeals for lack of jurisdiction without prejudice to the certification by the district court under Rule 54(b), F.R. Civ.P. In the meantime, all but one of the underlying bookreader cases had terminated. The district court therefore deemed the indemnification issues ripe for decision and denied certification under Rule 54(b).

On June 27, 1984, the district court, after argument, entered judgment and issued a memorandum and order on all remaining issues of defense and indemnification. The court reconsidered its previous duty to defend determinations in light of more recent case law, but made no changes. Regarding the duty to indemnify, the court reasoned that because it was impossible to determine in those bookreader cases that were settled on what theories of liability, if any, the claimants would have prevailed, the duty to indemnify must follow the duty to defend.

---

* Honorable Gustave Diamond, of the United States District Court for the Western District of Pennsylvania, sitting by designation.

The court then addressed the issues of apportionment, contribution, reimbursement, and prejudgment interest. Finally, the court ordered Nationwide to reimburse the other parties for attorney's fees and costs incurred in maintaining the declaratory judgment action from December 1, 1982 to the date of the judgment for its refusal to defend in any of the bookreader cases after its duty to do so had been determined in the previous opinion. The district court certified the issues for appeal under Rule 54(b). Nationwide and Aetna appealed; Pacific and JUA filed cross-appeals.

## II.

These appeals require us to decide if Pacific, JUA, Aetna and Nationwide each had a duty to defend Dr. Linn in the underlying bookreader suits; whether the duty to indemnify followed the duty to defend in those bookreader suits that were settled; whether the court erred in its interpretation and application of the "other insurance" provisions of various policies and its conclusions regarding apportionment and contribution; whether the district court erred in its resolution of the motions for reimbursement; whether the court erred in awarding prejudgment interest at ten percent rather than the six percent legal rate; and whether the district court erred in awarding attorney's fees and costs only against Nationwide and only from December 1, 1982 to June 27, 1984. Because so many issues are presented and vigorously pressed, this opinion is more extensive than we would like, especially in a diversity case that has no binding precedential effect on the Pennsylvania court system.

■ Most of the issues raised in these appeals involve the interpretation of insurance contracts. Determination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law. *McDowell-Wellman Engineering Co. v. Hartford Accident & Indemnity Co.,* 711 F.2d 521, 525 (3d Cir.1983). Therefore, our review is plenary. *Universal Minerals, Inc. v. C.A. Hughes & Co.,* 669 F.2d 98, 102–03 (3d Cir.1981). Similarly, whether an insurance policy is ambiguous is a legal question over which our review is plenary. *Viger v. Commercial Insurance Co.,* 707 F.2d 769, 774 (3d Cir.1983); *Northbrook Insurance Co. v. Kuljian Corp.,* 690 F.2d 368, 371 (3d Cir.1982). Our review of factual disputes is governed by the clearly erroneous standard. *Universal Minerals,* 669 F.2d at 102; Rule 52(a), F.R.Civ.P.

## III.

Each of the appealing insurance companies argues that the district court erred in holding that it had a duty to defend Dr. Linn in the underlying bookreader suits. After discussing general principles of insurance law regarding the duty to defend, we will address each company's arguments *seriatim.*

■ Under Pennsylvania law, an insurance company is obligated to defend an insured whenever the complaint filed by the injured party may *potentially* come within the policy's coverage. *Gedeon v. State Farm Mutual Automobile Insurance Co.,* 410 Pa. 55, 58, 188 A.2d 320, 321–22 (1963); *Cadwallader v. New Amsterdam Casualty Co.,* 396 Pa. 582, 152 A.2d 484 (1959); *Wilson v. Maryland Casualty Co.,* 377 Pa. 588, 105 A.2d 304 (1954); *Seaboard Industries, Inc. v. Monaco,* 258 Pa.Super. 170, 392 A.2d 738 (1978); *see C.H. Heist Caribe Corp. v. American Home Assurance Co.,* 640 F.2d 479, 483 (3d Cir.1981). The obligation to defend is determined solely by the allegations of the complaint in the action. *Wilson,* 377 Pa. at 594, 105 A.2d at 307; *see C.H. Heist Caribe Corp.,* 640 F.2d at 483 ("the factual allegations of [the] complaint against [the insured] are controlling."). The duty to defend remains with the insurer until the insurer can confine the claim to a recovery that is not within the scope of the policy. *Cadwallader,* 396 Pa. 582, 152 A.2d 484; *Seaboard Industries,* 258 Pa.Super. 170, 392 A.2d 738.

■ In construing an insurance policy, if the words of the policy are clear and unambiguous, the court must give the

words their plain and ordinary meaning. *Northbrook Insurance Co. v. Kuljian Corp.*, 690 F.2d 368, 372 (3d Cir.1982). When a term in the policy is ambiguous, however, and the intention of the parties cannot be discerned from the face of the policy, the court, in its attempts to arrive at a reasonable construction of the policy that is in accord with the parties' apparent intention, may look to extrinsic evidence of the purpose of the insurance, its subject matter, the situation of the parties, and the circumstances surrounding the making of the contract. *Id.* (citing *Celley v. Mutual Benefit Health & Accident Association*, 229 Pa.Super. 475, 482–83, 324 A.2d 430, 434 (1974)). Where ambiguous, insurance contracts are to be construed strictly against the insurer. *Mohn v. American Casualty Co.*, 458 Pa. 576, 586, 326 A.2d 346, 351 (1974). Hence, any ambiguities are to be resolved in favor of the insured. The language of a policy may not be tortured, however, to create ambiguities where none exist. *Houghton v. American Guaranty Life Insurance Co.*, 692 F.2d 289, 291 (3d Cir.1982). Exclusions from coverage contained in an insurance policy will be effective against an insured if they are clearly worded and conspicuously displayed, irrespective of whether the insured read the limitations or understood their import. *Standard Venetian Blind Co. v. American Empire Insurance Co.*, 503 Pa. 300, 307, 469 A.2d 563, 567 (1983). We now turn to the provisions of the relevant policies.

### A.

Pacific provided Dr. Linn with a professional liability policy. Pursuant to that policy, Pacific was obligated as follows:

I. Professional Liability. To pay in the name of and on behalf of the insured or his estate all damages for which the insured or his estate may be legally liable because of professional services rendered or which should have been rendered by the insured or any assistant in the practice of the named insured's profession of osteopathic physician or surgeon.

. . . .

II. Defense, Settlement, Supplementary Payments. With respect to such insurance as is afforded by this policy for liability for damages, the company shall: (a) defend any suit against the insured alleging such damages, even if such suit is groundless, false or fraudulent. . . .

App. at 1180. Relying on the principle that the factual allegations in the complaint determine the duty to defend, the district court concluded that Pacific was obligated to defend the *Bass, Smith, Weiss* and *James* complaints. In each of those, the claimants alleged medical malpractice or professional negligence. The district court reasoned that such claims are *potentially* within the scope of a professional liability policy. *See* app. at 282–83.

Pacific contends, however, that the district court erred because it did not make a determination as to whether the writing of *The Last Chance Diet* was the rendering of professional services as that term is used in the policy. Pacific asserts on appeal that it has no duty to defend Dr. Linn because the writing of the book is not a professional service, and therefore it is impossible for a claimant to recover within the scope of the policy. *Cf. Cadwallader*, 396 Pa. 582, 152 A.2d 484; *Seaboard Industries*, 258 Pa.Super. 170, 392 A.2d 738. Pacific misconstrues the relevant case law. The district court correctly focused on the factual allegations of the underlying book-reader complaints in determining the extent of Pacific's duty to defend. To focus on whether the writing of the book was a professional service would be tantamount to deciding that the bookreaders could never recover on the theories stated in their complaints. Such a decision could lead to an untenable result; that is, a claimant could conceivably recover in one court on a professional negligence theory and yet Dr. Linn would not be indemnified by Pacific under its professional liability policy because of the district court decision that the policy does not cover such claims. Neither decision would have a collateral estoppel effect on the other.

■ Further, the Pacific policy expressly provided that Pacific would defend any suit alleging damages within its professional liability scope even if groundless, false or fraudulent. The proper forum for determining whether Dr. Linn was guilty of malpractice or professional negligence is in the underlying bookreader suits. The district court did not err in determining that Pacific was obligated to defend the *Bass, Smith, Weiss* and *James* suits.[1]

### B.

■ Like Pacific, JUA also provided Dr. Linn with a professional liability policy. That policy provides in relevant part:

In Consideration of the payment of the premium, and subject to the limits of liability and the other terms of this policy, the Association hereby agrees to defend and pay damages, in the name and on behalf of the Insured or his estate,

A. In any claim for damages, at any time filed, based on professional services rendered or which should have been rendered, by the Insured or any other person for whose acts or omissions the Insured is legally responsible, in the practice of the Insured's profession during the term of this policy.

App. at 1484. The district court concluded that, by the terms of the policy, JUA had a duty to defend Dr. Linn in the *Bass, Smith,* and *James* cases because each alleged medical malpractice or professional negligence. For the reasons discussed above regarding Pacific, the district court did not err.

JUA contends, however, that an exclusion from coverage is operable, and therefore it is relieved of its duty to defend. Specifically, JUA cites its "business enterprise" exclusion, which provides:

This policy does not cover

A. any liability growing out of the ownership, operation or supervision by the Insured or an employee of the Insured of ... (b) any business enterprise, whether or not related to patient care and/or treatment....

*Id.* The district court decided that the meaning of "business enterprise," a term not defined in the policy, and the intent of the parties as to the scope of the exclusion were unclear, and therefore it strictly construed the terms of the policy against JUA. *See id.* at 468. As written, there do not appear to be any limits on this exclusion. Without rendering a tortured reading of the clause, one conceivably could conclude that all liability arising from Dr. Linn's profession as an osteopathic physician is excluded. Yet such a reading makes no sense because it totally eliminates all coverage. Recognizing the absurdity of this position, however, the clause gives no indication of precisely what is and what is not excluded from coverage. The insured physician reasonably could have expected that a professional liability policy would provide coverage for lawsuits alleging medical malpractice or professional negligence even though they arise from the publication and sale of a book. The district court did not err in strictly construing the terms of this unclear exclusion against JUA.

---

1. Aetna argues that the district court erred in not determining that Pacific had an obligation to defend *all* of the bookreader claims. This argument is without merit. Pacific provided Dr. Linn with professional liability insurance. Hence, Pacific must defend in only those cases that alleged medical malpractice or professional negligence.

Aetna further contends that the district court's fact findings as to the insured-premises clause of the Pacific policy are clearly erroneous. The district court found that: the Lawrence Road office was listed under "premises" in the Office Premises Endorsement of the Pacific policy; the Sproul Road office was not listed under "prem-

ises;" the Lawrence Road office is used solely for administrative purposes; Dr. Linn conducted his practice at the Sproul Road office; there was no evidence presented showing that Dr. Linn did anything in connection with *The Last Chance Diet* at the Lawrence Road office; and none of the bookreader complaints expressly claimed that any services ·were rendered or should have been rendered at one·of Dr. Linn's offices. App. at 324. Aetna points to no evidence of record that contradicts any of these findings. Therefore they should not be disturbed under our clearly erroneous standard of review.

## C.

Aetna also argues that the district court erred in holding that it had a duty to defend Dr. Linn in the bookreader suits. In Aetna's case, the district court held the defense duty applicable in all of the bookreader suits. Aetna provided Dr. Linn with personal injury liability insurance, which obligated Aetna as follows:

The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

Coverage A. bodily injury or

Coverage B. property damage

to which this insurance applies, caused by an occurrence, and the Company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent. . . .

*Id.* at 1307. Bodily injury is defined as "bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom." *Id.* at 1301. Occurrence means "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." *Id.* at 1302. The bookreader injuries, without question, come within these definitions, and therefore are covered by the insuring clause.

In the district court and on appeal, Aetna contends that several exclusions contained in the policy eliminate any duty on its part to defend Dr. Linn. Remembering that, where ambiguous, exceptions to an insurer's general liability are to be strictly construed against the insurer, *see Miller v. Prudential Insurance Co.*, 239 Pa.Super. 467, 472, 362 A.2d 1017, 1020 (1976), we now consider each exclusion.

### 1.

■ First, Aetna contends that its professional services exclusion relieves it of its duty to defend. That clause provides:

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to COMPREHENSIVE GENERAL LIABILITY INSURANCE.

It is agreed that with respect to any operation described below or designated in the policy as subject to this endorsement, the insurance does not apply to bodily injury or property damage due to the rendering of or failure to render any professional service.

Description of Operations:

PHYSICIANS OFFICES (CODE 80111)

App. at 1317. The terms "operation," "professional service," and "Physicians Offices (Code 80111)" are not defined in the policy. Recognizing that insurance clauses are regarded as ambiguous if they are "reasonably susceptible of more than one interpretation," *C.H. Heist Caribe Corp. v. American Home Assurance Co.*, 640 F.2d 479, 481 (3d Cir.1981), this exclusion may be deemed inapplicable because it suffers from ambiguity. As the district court noted, the clause may be fairly read as to exclude from coverage only the rendering of professional services at the physician's office. Although Aetna's reading of the exclusion is plausible, *i.e.*, professional services are not covered, under Pennsylvania law the ambiguity must be resolved in favor of the insured. Therefore, the district court did not err in holding this exclusion inapplicable.

### 2.

■ Second, Aetna argues, less forcefully on appeal, that the joint venture clause allows it to escape its obligation to defend. That clause provides: "This insurance does not apply to bodily injury or property damage arising out of the conduct of any partnership or joint venture of which the insured is a partner or member and which is not designated as a named insured." App. at 1309. As the district court correctly noted, by its placement in the policy, the clause excludes only those joint ventures or partnerships that relate to

the operation of mobile equipment. *Cf. Insurance Co. of North America v. Black,* 606 F.2d 650 (5th Cir.1979) (recognizing that typography, indentation and margins are critical in interpreting insurance provisions). Hence, the exclusion is of no import here.

### 3.

■■■■■ Aetna also contends that it is relieved of its defense duty by virtue of the completed operations hazard and products hazard exclusion contained in the policy. That clause provides:

> This endorsement modifies such insurance as is afforded by the provisions of the policy relating to COMPREHENSIVE GENERAL LIABILITY INSURANCE.
>
> It is agreed that such insurance as is afforded by the Bodily Injury Liability Coverage and the Property Damage Liability Coverage does not apply to bodily injury or property damage included within the Completed Operations Hazard or the Products Hazard.

App. at 1314. Further, the completed operations hazard is defined in the policy:

> "completed operations hazard" includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured. "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:
>
> (1) when all operations to be performed by or on behalf of the named insured under the contract have been completed,
>
> (2) when all operations to be performed by or on behalf of the named insured at the site of the operations have been completed, or

> (3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.
>
> Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.
>
> The completed operations hazard does not include bodily injury or property damage arising out of:
>
> (a) operations in connection with the transportation of property, unless the bodily injury or property damage arises out of a condition in or on a vehicle created by the loading or unloading thereof,
>
> (b) the existence of tools, uninstalled equipment or abandoned or unused materials, or
>
> (c) operations for which the classification stated in the policy or in the Company's manual specifies "including completed operations".

*Id.* at 1301–02. Under Pennsylvania law, this clause is intended to cover businesses that perform contracts at premises other than their own. *See Friestad v. Travelers Indemnity Co.,* 260 Pa.Super. 178, 393 A.2d 1212 (1978). The district court properly held that Aetna failed to meet its burden of establishing that this exclusion precludes policy coverage and the duty to defend.

■■■■■ Regarding the products hazard exclusion, that term is defined in the policy as follows:

> "products hazard" includes bodily injury and property damage arising out of the named insured's products or reliance upon a representative or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from premises owned by or rented to the named insured and

after physical possession of such products has been relinquished to others. App. at 1303. The policy further defines "named insured's products" as:

goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, including any container thereof (other than a vehicle), but "named insured's products" shall not include a vending machine or any property other than such container, rented to or located for use of others but not sold.

*Id.* at 1302. The bookreader claims arguably fall within this exclusion. The injuries allegedly sustained in the underlying bookreader suits occurred away from Dr. Linn's premises after the book was "relinquished to others." The question then is whether *The Last Chance Diet* is Dr. Linn's product. What is fatal to Aetna's argument that the book is a product and hence coverage is precluded by the terms of the policy is that the policy does not clearly prove or disprove that writing a book is manufacturing a product within the meaning of the exclusion. The clause is ambiguous as it is reasonably susceptible of different interpretations. The district court correctly noted that most people would not understand the clause to encompass the writing of a book. Where an exclusion is not prominently displayed (here it was buried in a 140-page policy) and not clearly worded, it may be strictly construed against the insurer. *See Standard Venetian Blind Co. v. American Empire Insurance Co.*, 503 Pa. 300, 307, 469 A.2d 563, 567 (1983). Further, recognizing that there may be some question as to whether a book can be a defective product within the meaning of products liability law, a question we do not reach, the guiding principle is that an insurer is obligated to defend any claims against an insured to which the policy potentially applies. *See Gedeon v. State Farm Mutual Automobile Insurance Co.*, 410 Pa. 55, 58, 188 A.2d 320, 321–22 (1963). Aetna has not established that any of the cited exclusions relieve it of its duty to defend Dr. Linn. In addition, Aetna's reliance on extrinsic evidence concerning the purchase of

the policy does not compel a different result.

### IV.

 Nationwide is the final insurer to argue on appeal that the district court erred in determining that it was obligated to defend Dr. Linn. Nationwide provided Dr. Linn with a homeowner policy that protects him against loss from damages for "negligent personal acts." App. at 1548. The district court concluded that the policy obligated Nationwide to defend in those bookreader suits alleging that Dr. Linn was negligent in writing *The Last Chance Diet*. These include the *Smith, Lehman, Silberlicht, Cochran, Hudgens, Harmon,* and *Hutton* claims. The court further concluded that Nationwide did not have a duty to defend the *James* and *Bass* complaints because the claimants in those suits alleged only professional negligence. Nationwide argues that the professional services and business enterprises exclusions contained in the policy take the bookreader claims out of the scope of its policy. We disagree.

Nationwide maintains that although the bookreader claims do allege negligent personal acts on the part of Dr. Linn, those acts stem from the writing of his book, which represents the rendering of a professional service. To bolster its argument, Nationwide relies on several facts: Dr. Linn became aware of liquid protein as part of his medical studies in nutrition; Dr. Linn held himself out as a doctor and a professional throughout the contents of the book; and Dr. Linn submitted galley proofs of the book to other doctors for their review.

Nationwide concedes, however, that the policy contains no definition of "professional service." To reiterate, where ambiguous, insurance contracts are to be construed strictly against the insurer. *Mohn v. American Casualty Co.*, 458 Pa. at 586, 326 A.2d at 351. The term "professional service" could apply only to the rendering of services on a personal, individual basis, which did not occur here, or to the performance of any acts that are an outgrowth of the knowledge gained through the practice

of a profession, which this book arguably represents. Because seven of the bookreader claims rely solely on a personal negligence theory of recovery, which falls outside the ambiguous professional services exemption, we agree that Nationwide must defend Dr. Linn in those suits.[2]

■ Regarding the business enterprises exclusion, it exempts from coverage "activities in connection with a business solely owned by an Insured or owned by a partnership of which an Insured is a partner, *except* such acts as are ordinarily incident to non-business pursuits...." App. at 1550. At best, this exclusion also is ambiguous. Dr. Linn's writing of the book did not constitute his business, although a profit motive cannot be denied. His business remained the practice of osteopathic medicine. Furthermore, Dr. Linn simply authored a diet book. This authorship did not connote a "business" in terms of an ongoing operation with assets owned by Dr. Linn. Nationwide, therefore, has not met its burden of showing that the exclusion precludes coverage.

Accordingly, we affirm the district court's determination that the above stated insurance companies had a duty to defend. We now turn to the indemnity question.

## V.

The district court held that, in those bookreader suits that were settled, the duty to indemnify necessarily had to follow the duty to defend because settlement made it impossible to determine on what theories of liability, if any, the underlying claimants would have prevailed. The three cases that were not settled terminated in final judgment in favor of Dr. Linn, and therefore do not implicate the duty to indemnify. Pacific argues that, by so holding, the district court impermissibly placed the burden of establishing the indemnification duty on the insurer, rather than the insured. The other insurers concede, either expressly or impliedly, that if the district court's duty to defend determinations are upheld, then the court properly imposed the duty to indemnify on them. Pacific's argument is without merit.

■ This court has recognized that obligations to defend are wider than obligations to indemnify. *C.H. Heist Caribe Corp. v. American Home Assurance Co.,* 640 F.2d 479, 481 (3d Cir.1981). From this, Pacific contends that the wider defense obligation cannot form the basis for the duty to indemnify. Although this is true in any case in which sufficient facts are established confining the claim to a recovery not within the scope of the policy, the settlements in the underlying suits here preclude such factual determinations. As the district court noted, the duty to defend carries with it the conditional obligation to indemnify until it becomes clear that there can be no recovery within the insuring clause. *See* app. at 472. To reach the opposite conclusion could result conceivably in an insured never being indemnified in a suit that its insurer settles where that insurer defends under a reservation of rights. In such a situation, it would behoove the insurer to reserve its rights and to settle the suit to avoid both the costs of litigation and, at the same time, the costs of indemnification. Such a strategy should not be countenanced. We are persuaded that the approach adopted by the district court cannot be faulted because it is justified by both rational and pragmatic considerations.

---

**2.** Our interpretation of the Aetna and Nationwide policies may appear to create an inconsistency—we hold that Dr. Linn's acts are covered by both professional malpractice and personal negligence policies. Our duty, however, is to follow the rules of interpretation for language contained in insurance policies, and not to be guided by the labels or titles those policies contain. Accordingly, because Dr. Linn's writing of his book has attributes of both personal and professional activity, coverage under his numerous liability policies very well may be overlapping. Suffice it to say, this case dramatizes the absolute necessity for insurance companies to use specific, unambiguous language in the text of their policies. Liability is imposed on these companies in this case because of the terminology they inserted in the text of their policies, irrespective of the labels or titles given the policies.

## VI.

Once it addressed the duty to indemnify issue, the district court turned to consider the effect of "other insurance" clauses contained in the various policies. Those clauses limit the extent to which an insurer is liable where the insured carries another policy or policies applicable to the claimed loss. The district court held that only the Pacific and JUA policies constitute "other insurance" as to each other. Pacific and Nationwide take issue with this conclusion.

 Under Pennsylvania law, "other ... insurance exists only where there are two or more insurance policies covering the same interest, the same subject matter and [insuring] against the same risk." *Blue Anchor Overall Co. v. Pennsylvania Lumbermens Mutual Insurance Co.*, 385 Pa. 394, 400, 123 A.2d 413, 415 (1956). Here, Pacific and JUA provided coverage to Dr. Linn for professional liability, *i.e.,* liability for professional services rendered or which should have been rendered by the insured in the practice of the insured's profession. Therefore, the district court properly held that they are "other insurance" as to each other. Aetna's primary policy, on the other hand, provided commercial general liability coverage for occurrences resulting in bodily injury or property damage and insured against a risk distinct from the professional liability covered by the Pacific and JUA policies. Likewise, the Nationwide homeowner's policy, protecting Dr. Linn against loss from negligent personal acts, insured against a risk different from that covered by either the Aetna commercial general liability policy or the professional liability policies of Pacific and JUA. The district court did not err in concluding that neither the Aetna nor Nationwide policies were "other insurance" to

each other or to the Pacific and JUA policies.[3]

### A.

Nationwide asserts that the district court misapplied the "other insurance" clauses because the insurers have shown a preference for contribution according to the proportion that the limits of each policy bore to the combined limits of all policies. Nationwide relies on a case from the Fifth Circuit stating that "where two or more insurance carriers have primary coverage, they share the liability either equally or in proportion to the limits of each policy as compared to the combined limits of all policies." *Employers Casualty Co. v. Employers Commercial Union Insurance Co.*, 632 F.2d 1215, 1218 (5th Cir.1980) (applying Alabama law). We do not find Nationwide's assertion persuasive. To reach the result advanced by Nationwide, the plain language of *Blue Anchor* that defines "other insurance" would have to be ignored. Neither common sense nor the case law support such a construction. That Aetna's coverage is stated to be "primary" does not compel a different result. Because the insurers covered different interests and risks, their coverages did not "apply to the loss on the same basis" within the meaning of the Aetna policy. *See* app. at 1304–05.

### B.

 Pacific contends that the district court erred in its interpretation of JUA's excess coverage. We find no error. JUA and Pacific insured the same interest, subject matter and risk; hence they are "other insurance" to each other. Pacific's policy provided that any loss shall be distributed on a "pro rata" basis, *i.e.,* each insurer shall be liable for that portion of the loss

---

**3.** More than one policy was deemed applicable to each bookreader case. Therefore, this result is not inconsistent. Each of the underlying suits alleged several theories of liability implicating different insurers. But had a case resulted in a money judgment against Dr. Linn, only one insurer might have been liable for the judgment. For example, the claimant in *Lehman*

alleged both strict liability and negligence but not malpractice; therefore, Aetna and Nationwide had a duty to defend Dr. Linn. Had the case not settled, the claimant may have prevailed on one claim but not the other. In that event only one of the insurers would have been obligated to indemnify Dr. Linn.

that the applicable limit of the single policy bears to the total applicable limits of all valid and collectible insurance. JUA's policy contains an "excess" other insurance clause, which provides:

If the Insured carries a policy of another insurer against any loss covered by this policy, the Association shall not be liable for any payment hereunder until all payments under such other insurance are exhausted. In addition, the limits of liability under this policy shall be reduced by the extent of payments made by such other insurer.

*Id.* at 1485. Where two policies are concurrently effective and one contains an "excess" clause and the other a "pro rata" clause, the "excess" clause will be given full effect and the "pro rata" clause will be disregarded. *Walters v. Dunlap,* 250 F.Supp. 76, 81 (W.D.Pa.), *aff'd,* 368 F.2d 118 (3d Cir.1966). Therefore, the district court correctly held that until the Pacific policy limits are reached, JUA is not obligated to pay. This analysis is not affected by the coverages provided by the other insurers.

We now turn to the question of reimbursement.

### VII.

Each of the insurers sought reimbursement for moneys expended in the defense and settlement of the various bookreader suits. The district court granted the motions, awarding reimbursement in accordance with the duties to defend and indemnify. *See* app. at 480. The court reasoned that, because the duty to defend is independent of liability, each insurer owing Dr. Linn a defense in a particular bookreader case is required to contribute to the costs of defense in equal shares with any other insurer also obligated to defend Dr. Linn in that case. *Id.* (citing *First Insurance Co. of Hawaii v. Continental Casualty Co.,* 466 F.2d 807, 811 (9th Cir.1972)). The court therefore granted each insurer's claim for reimbursement to the extent the claim reflects payment in excess of the defense and indemnity obligations allocated

to that insurer. Disputes regarding the reasonableness of the amounts claimed were to be submitted to arbitration. The district court also ordered that each insurer need pay only its required percentage of defense and settlement costs even though they were jointly and severally liable, reasoning that the suit was a declaratory judgment action and all the relevant insurers were concurrently before the court. *Id.* at 480 n. 16. Several of the insurers take issue with the district court's reimbursement awards.

### A.

■ Pacific argues that the district court erred in relieving Aetna of its joint and several liability, contending that its ruling is unwarranted under the circumstances of the case. We disagree. The district court recognized that, in this action, all of the relevant parties were before the court. The court's approach serves to conserve judicial resources and to simplify the resolution of this complex case. Pacific has lost nothing by the court's ruling except the convenience of seeking reimbursement from Aetna alone.

### B.

Aetna contends that the district court should have awarded specific sums and erred in not doing so. Again, we do not agree. The district court set forth each insurer's liability under its obligations both to defend and indemnify and ordered that disputes as to the amounts claimed be submitted to arbitration. The district court need do no more.

### C.

Nationwide also argues that the district court erred in granting the reimbursement motions because they were filed prematurely. This argument, too, is wholly without merit. We now meet the question of prejudgment interest.

### VIII.

■ Nationwide argues that the district court erred in awarding prejudgment

interest on the reimbursed funds at ten percent rather than the six percent legal rate. We are not persuaded by this argument.

Under Pennsylvania law, prejudgment interest in the ordinary suit for contract damages is limited to six percent. *See* Pa.Stat. Ann. tit. 41, § 202. Where a claim sounds in restitution, the court may, in its discretion, award prejudgment interest in an amount greater than the legal rate. *Peterson v. Crown Financial Corp.*, 661 F.2d 287, 292–93 (3d Cir.1981). Although the actual duties to defend and indemnify are contractual in nature, the right of contribution from others is grounded in equity. *See Embrey v. Borough of West Mifflin*, 257 Pa.Super. 168, 185, 390 A.2d 765, 774 (1978) ("Contribution, indemnity and apportionment are each procedures to approximate an equitable division of responsibility between defendants who are jointly liable to a plaintiff."). Hence, the district court did not err in awarding prejudgment interest at a rate greater than the legal rate. Further, in arriving at the ten percent figure, the court relied on the prevailing three-month Treasury Bill rate, which, during the pendency of this action, fluctuated between 8.63% and 14.08%. The district court did not abuse its discretion in awarding prejudgment interest at the rate of ten percent, a fair average figure.

### IX.

In its opinion of December 1, 1982, the district court held that Pacific and Dr. Linn were not entitled to reimbursement for their costs and attorney's fees incurred in the declaratory judgment action because the complex and unusual factual and legal situation precluded clear determination of the duties to defend and indemnify up to that time. That opinion determined the various duties to defend. Since then, Nationwide steadfastly refused to defend Dr. Linn in the underlying bookreader suits, notwithstanding the district court's order that it do so. In light of this refusal, the district court ordered, in its June 27, 1984 opinion, that Nationwide pay the other parties' attorney's fees and costs incurred in maintaining the declaratory judgment action from December 1, 1982. Pacific argues that the district court erred in not awarding it attorney's fees from all the insurers for the entire action. Nationwide argues that the district court erred in assessing attorney's fees against it from December 1, 1982.

A court may award attorney's fees and costs incurred in bringing an action to establish the duties to defend and indemnify where the insurer's refusal to defend is unreasonable and in bad faith. *Montgomery Ward & Co. v. Pacific Indemnity Co.*, 557 F.2d 51, 60 (3d Cir.1977); *Kelmo Enterprises, Inc. v. Commercial Union Insurance Co.*, 285 Pa.Super. 13, 24, 426 A.2d 680, 685 (1981). We agree with the district court's characterization of this case as complex up to the time of the December 1, 1982 judgment. We further agree that the insurers' refusals to defend up to that point were neither unreasonable nor in bad faith in light of the complexities involved. We conclude, therefore, that the district court did not err in denying Pacific's motion for attorney's fees in its December 1, 1982 opinion.

Applying this standard of unreasonable and bad faith refusal to defend to Nationwide's continued refusal to defend Dr. Linn after the December 1982 judgment, we are persuaded that the district court properly assessed attorney's fees against Nationwide. Nationwide's persistent refusal to defend, notwithstanding the district court's determination of its obligation to do so, can be characterized as nothing less than unreasonable and in bad faith. The district court committed no error in its disposition of the attorney's fees motions.

Dr. Linn asserts in several of his reply briefs that he, too, is entitled to attorney's fees. To the extent that Dr. Linn is making such a request, we will not consider it. The issue is foreclosed because Dr. Linn did not appeal the district court's determination that was adverse to him. *See Swarb v. Lennox*, 405 U.S. 191, 200–01, 92 S.Ct. 767, 772, 31 L.Ed.2d 138 (1972);

*Hattersley v. Bollt,* 512 F.2d 209, 216 (3d Cir.1975). Even if we were to recognize Dr. Linn's request, the reasons for denying Pacific's request for fees and costs also could apply to Dr. Linn.

### X.

The judgment of the district court will be affirmed in all respects.