**TWIN CITY FIRE INSURANCE COMPANY**

v.

The **HOME INDEMNITY COMPANY.**

**Civ. A. No. 85–4123.**

United States District Court, E.D. Pennsylvania.

Dec. 30, 1986.

See also, 112 F.R.D. 25.

James A. Young and Mary Ellen Nepps, Sprecher, Felix, Visco, Hutchinson & Young, Philadelphia, Pa., for petitioner.

Michael P. McKenna, Margolis, Edelstein, Scherlis, Sarowitz and Kraemer, Philadelphia, Pa., for respondent.

## MEMORANDUM AND ORDER

SHAPIRO, District Judge.

This declaratory judgment action was commenced by North American Hotels, Ltd., t/a The Latham ("The Latham") and Twin City Fire Insurance Company ("Twin City") to resolve a dispute between Twin City and The Home Indemnity Company ("Home Indemnity"), both insurers of The Latham, as to which insurer is obligated to defend and indemnify The Latham in a state court action filed by a Latham employee. On June 23, 1986, the court granted the motion of The Latham to dismiss it as a party to this action; The Latham agreed to be bound by the judgment of this court as a condition to its dismissal. Pending before the court are cross-motions for summary judgment on which the court heard argument. The parties have stipulated to those facts material to the cross motions.

On December 4, 1980, Linda Redford ("Redford"), an employee of The Latham, was raped by a non-employee while performing her duties as a chambermaid at the hotel. At the time of the rape, The Latham had a workmen's compensation employer's liability policy with Home Indemnity and a general liability policy with Twin City.

On February 11, 1982, Redford filed an action in the Philadelphia Court of Common Pleas against The Latham to recover damages for injuries she sustained as a result of the rape. The Latham promptly notified Twin City (or or about March 1, 1982) and Home Indemnity (on or about March 4, 1982) of the lawsuit and forwarded a copy of Redford's complaint to each carrier. Twin City immediately undertook the defense.

On May 3, 1984, the jury returned a verdict in the Redford action in the sum of $366,240. Twin City then demanded by letter of June 4, 1984 that Home Indemnity take over the defense; no prior demand had been made of Home Indemnity. Home Indemnity refused to assume the defense or indemnify The Latham on August 10, 1984 and thereafter. On December 13, 1985, The Latham, represented by counsel provided by Twin City, filed an appeal with the Superior Court of Pennsylvania; the Superior Court has not yet ruled on this appeal.

Plaintiffs filed this declaratory judgment action on July 16, 1985. The five-count complaint seeks the following specific relief:

1. a determination that Home Indemnity is legally obligated to provide a defense to The Latham in the Redford action;

2. a determination that Home Indemnity is legally obligated to provide indemnification to The Latham for any judgment or settlement in the Redford action;

3. a determination that Home Indemnity is obligated to reimburse Twin City for its costs in investigating and defending the Redford action;

4. a determination that Home Indemnity is obligated to reimburse Twin City for costs incurred in connection

with this declaratory judgment, including attorneys' fees; and

5. a determination that Home Indemnity is obligated to pay punitive damages to Twin City as a result of its bad faith failure to honor contractual obligations to Twin City.

## ESTOPPEL

■ Home Indemnity claims that Twin City is estopped from bringing this action because Twin City's demand that Home Indemnity assume the defense was untimely. The rape occurred on December 4, 1980; Twin City did not make its demand until June 4, 1984, one month after the jury had reached a verdict adverse to the insured. To prevail on its claim of estoppel, Home Indemnity must establish that it has been prejudiced as a consequence of Twin City's "untimely demand," see *Brakeman v. Potomac Insurance Co.*, 472 Pa. 66, 371 A.2d 193 (1977). Home Indemnity claims that it has been prejudiced because Twin City deprived it of the opportunity to manage and control the defense.

The Agreement between The Latham and Home Indemnity does not require a formal demand to invoke Home Indemnity's obligations in connection with a court proceeding. It requires only that The Latham provide Home Indemnity with notice of the proceeding: "If claim is made or suit or other proceeding is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative."

The Latham notified Home Indemnity of the rape on January 5, 1981, approximately one month after the occurrence giving rise to the litigation. Following the filing of the Redford complaint in the Philadelphia Court of Common Pleas on February 12, 1982, Allen J. Swotes, Esquire, counsel to The Latham, notified Waber Odell Company, the insurance broker who secured Home Indemnity's policy with The Latham, of the lawsuit by letter dated March 4, 1982 enclosing a copy of the Redford complaint.

Within a few days, Home Indemnity itself was aware of the Redford action.

If formal demand by the insured or Twin City were a prerequisite to Home Indemnity's obligations under its insurance agreement with The Latham, then the lateness of Twin City's demand might support Home Indemnity's contention that it has been deprived of the opportunity to manage and control the defense. But the agreement does not require a formal demand; it requires only that the *insured* provide the insurer with notice of the action. There was no legal obligation for Twin City to make a formal demand on Home Indemnity. The Latham complied with the notice requirement. The Latham notified Home Indemnity that an employee had been raped and sent a copy of Redford's complaint to Home Indemnity's authorized agent within one month after it was filed. Home Indemnity had the opportunity to manage and control the defense. It knew of the Redford action from its commencement but chose to do nothing about it. Home Indemnity permitted Twin City to defend without objection. Having voluntarily chosen not to participate in the defense, Home Indemnity cannot successfully claim prejudice now. Twin City admitted at oral argument that it would not have demanded contribution if The Latham won the Redford suit, and did not make its demand until after an adverse jury verdict, but this does not establish prejudice against Home Indemnity; Home Indemnity had the opportunity to defend the Redford suit from soon after its commencement. Home Indemnity's claim of estoppel fails.

## WAIVER

■ Home Indemnity also contends that Twin City waived its right to bring this action by failing to enter into a non-waiver agreement or reservation of rights. In *Malley v. American Indemnity Co.*, 297 Pa. 216, 146 A. 571 (1929), the Supreme Court of Pennsylvania held that an insurer who defended a personal injury action was estopped after an adverse verdict from claiming that the insured was not covered under the insurance agreement.

But *Malley* is inapposite because it was an action between an insurer and an insured; this action is between two insurers. Here, unlike *Malley*, the insurer (Twin City) is not seeking to withdraw from the underlying action; it seeks to join/substitute another insurer. Unlike *Malley*, regardless of the outcome of this action, the insured will be defended and fully indemnified. Home Indemnity cites no case where the doctrine of waiver has been applied to a case to protect an insurer rather than an insured.

Twin City had a legal obligation to defend The Latham in the Redford action. There was no waiver or voluntary relinquishment of a right in doing what one was legally obligated to do. Twin City has not waived its right to bring this action.

## COUNT I—DUTY TO DEFEND

■ Twin City contends that Home Indemnity had and has the duty to defend The Latham in the Redford action. Under Pennsylvania law, an insurer has a duty to defend its insured whenever the complaint filed by the injured party may "potentially come within the policy's coverage." *Pacific Indemnity Co. v. Linn*, 766 F.2d 754, 760 (3d Cir.1985). In making this determination, the factual allegations of the complaint are controlling. The duty to defend remains with the insurer unless and until the insurer can confine the claim to a recovery that is not within the scope of the policy. *Id.* Therefore, in determining whether Home Indemnity had and still has a duty to defend as Twin City contends, the issue is whether the claims stated in the Redford complaint were potentially covered by Home Indemnity's policy.

The policy that Twin City issued to The Latham provided for comprehensive general liability insurance for the period from September 10, 1980 until September 10, 1983; the policy limit was in the sum of $1,000,000. The policy obligated Twin City as follows:

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

bodily injury,

property damages,

personal injury or

advertising injury

to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such injury or damage, even if any of the allegations of the suit are groundless, false or fraudulent....

The policy also stated some exclusions. The exclusions relevant to this action provided that the policy did not apply:

(h) to any obligation for which the insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

(i) to bodily injury to any employee of the insured arising out of and in the course of his employment by the insured or to any obligation of the insured to indemnify another because of damages arising out of such injury....

The policy that Home Indemnity issued to The Latham provided Workmen's Compensation and Employers' Liability coverage for the period from May 5, 1980 to May 5, 1981; the policy limit was in the amount of $100,000. The policy obligated Home Indemnity as follows:

1. Coverage A—Workmen's Compensation: To pay promptly when due all compensation and other benefits required of the insured by the workmen's compensation law.

Coverage B—Employers' Liability: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury by accident or disease, including death at any time resulting therefrom,

(a) sustained in the United States of America ... by any employee of the insured arising out of and in the course of his employment by the insured....

This policy also contained six exclusions. The relevant exclusion provided that the policy did not apply:

(f) under coverage B, to any obligation for which the insured or any carrier as his insurer may be held liable under the workmen's compensation or occupational disease law. . . .

Twin City contends that Redford's claims fall within exclusion (i) of its policy with The Latham and under Coverage B of Home Indemnity's policy so that Home Indemnity is required to defend and indemnify The Latham. Home Indemnity, citing *Federal Rice Drug Company v. Queen Insurance Company of America,* 463 F.2d 626 (3d Cir.1972), contends that coverage B is limited to claims compensable under the Workmen's Compensation Act, and that the Redford claims are not compensable under the Act so that it is not required to defend or indemnify The Latham.

In *Federal Rice,* the estate of a deceased employee suing the employer contended that the employer's president, acting within the scope of his employment, harassed the deceased employee so that the employee suffered great emotional distress and committed suicide. The estate contended that decedent's death was caused by the negligent and/or intentional conduct of the employer. The general liability carrier refused to defend or indemnify the insured employer. The employer settled with the decedent's estate and then sued the insurer to recover the amount it paid in settlement plus attorneys' fees.

The general liability policy in *Federal Rice* contained two relevant exclusions. The policy did not apply:

(f) to any obligation for which the insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

(g) to bodily injury, to sickness, disease or death of any employee of the insured arising out of and in the course of employment by the insured.

Reversing the district court, the Court of Appeals for the Third Circuit held that the complaint of decedent's estate did not fall within exclusions (f) or (g) because it was not within the purview of the workmen's compensation law so that the insurer had a duty to defend and indemnify the insured employer. The court found exclusions (f) and (g) to be the substantial equivalents of Coverages A and B of the standard Workmen's Compensation and Employer Liability policy: Coverage A insured against liability to those employees who elected for Workmen's Compensation Act coverage; Coverage B insured against liability to employees who were eligible for but elected not to be covered by workmen's compensation.

Exclusions (f) and (g) of the general liability policy in *Federal Rice* are almost identical to exclusions (h) and (i) of the Twin City policy. Relying on *Federal Rice,* Home Indemnity contends that if the Redford claims are not compensable under the Workmen's Compensation statute, neither exclusions (h) and (i) of the Twin City policy nor coverage provisions A and B of the Home Indemnity policy apply, in which case, Home Indemnity is not required to defend or indemnify The Latham. Whether or not Redford's claims are compensable under the Pennsylvania Workmen's Compensation Act is one of the issues on appeal to the Superior Court of Pennsylvania.

In *Federal Rice,* the court's interpretation of the scope of Coverage A and Coverage B was grounded on the right of an employee to elect to recover under the Workmen's Compensation Act. But in 1984, the Act was amended: an employee no longer has the right to elect against workmen's compensation; where the Workmen's Compensation Act applies, it is the employee's exclusive remedy. 77 Pa.C.S.A. § 481(a). Since workmen's compensation is now an employee's exclusive remedy, the distinction drawn by the *Federal Rice* court is inapposite to claims under the Act as amended. Were this court now to construe Coverage B to be limited to claimants eligible for but electing against workmen's compensation, no claims would fall within Coverage B because Pennsylvania employees can no longer elect against the statute. Such a construction also is inconsistent

with exclusion (f), which provides that Coverage B does not extend to claims which may be compensable under the applicable workmen's compensation statute. The standard Workmen's Compensation and Employer Liability policy referred to in *Federal Rice* does not appear to contain an exclusion to Coverage B equivalent to exclusion (f) of Home Indemnity's policy. *Federal Rice* does not govern interpretation of the Home Indemnity agreement because the Pennsylvania statute was amended and Home Indemnity did not revise its standard agreement thereafter. Therefore, the court must apply the general rules of construction in connection with insurance policies.

In construing an insurance policy, the court must give the words their plain and ordinary meaning if the words of the policy are clear and unambiguous. *Pacific Indemnity Co. v. Linn,* 766 F.2d 754 (3d Cir.1985). The words of Coverage B and exclusion (f) are clear and unambiguous. The plain and ordinary meaning of Coverage B as limited by exclusion (f) is that it covers all claims which an employee may assert against his employer arising out of and in the course of his employment but not subject to workmen's compensation.

Having determined the scope of Coverage B, the court must now determine whether Home Indemnity was under a duty to defend under its policy, that is, whether the Redford claims potentially came within Coverage B. The Redford complaint averred that Linda Redford was raped while in the course of performing her duties as a chambermaid at The Latham. The complaint clearly stated a claim that *potentially* arose out of and in the course of her employment and might not have been compensable under the workmen's compensation statute. *See Pacific Indemnity,* 766 F.2d at 760. Home Indemnity had a duty to defend. It cannot be said that exclusion (f) unequivocally applied. As to Count I, summary judgment is entered in favor of plaintiff.

## COUNT II—DUTY TO INDEMNIFY

◼ On December 13, 1985, The Latham appealed the jury verdict to the Superior Court of Pennsylvania. Twin City contends, *inter alia,* that the Redford claims are compensable under workmen's compensation so that Redford's common law claims are barred; 77 Pa.C.S.A. § 481(a). Home Indemnity admits having made workmen's compensation payments to Redford pursuant to Coverage A of its policy.

If the appellate court finds Redford's claims outside the parameters of the Workmen's Compensation Act, Home Indemnity must indemnify The Latham up to its policy limits of $100,000. Twin City has agreed to indemnify The Latham for any verdict or settlement in excess of $100,000.

Defendant contends that the insurance agreements provide concurrent coverage so that under the "other insurance" clauses of both policies, providing *pro rata* payment where there is concurrent coverage, Home Indemnity's obligation to indemnify is limited to a *pro rata* proportion (10%) of any recovery. But the insurance agreements do not provide for concurrent coverage. They do not cover the same interest or insure the same risk. On the contrary, coverage under the policies is mutually exclusive: exclusion (i) of Twin City's policy excludes coverage for those claims covered under Coverage B of the Home Indemnity policy. Because there is not concurrent coverage, the "other insurance" clauses do not apply; Home Indemnity's duty to indemnify is not limited to a *pro rata* portion of the recovery. As to Count II, summary judgment is entered in favor of plaintiff: Home Indemnity must indemnify The Latham to the $100,000 limits of its policy if there is a final adverse judgment against it; Twin City must indemnify The Latham for any final adverse judgment in excess of $100,000.

## COUNT III—REIMBURSEMENT FOR COSTS AND EXPENSES INCURRED IN CONNECTION WITH THE REDFORD ACTION

◼ Twin City contends that it is entitled to reimbursement from Home Indemnity for the costs and expenses in connection with the Redford action; the duty to defend includes the obligation to bear the costs of conducting the defense. Home

Indemnity contends that Twin City assumed the defense of The Latham without an obligation to do so and that it is a "volunteer" under Pennsylvania law and is precluded from recovering the costs of defense. *Tugboat Indian Co. v. A/S Ivarans Rederi*, 334 Pa. 15, 5 A.2d 153 (1939).

Twin City did have an obligation to assume the defense. Twin City provided general liability insurance to The Latham. At the time it received a copy of the Redford complaint, it could not unequivocally state that some exclusion to its coverage applied. The Redford claims potentially came within the coverage of the Twin City policy. Twin City had a duty to defend and was not a volunteer under Pennsylvania law. Both Home Indemnity and Twin City had a duty to defend under *Pacific Indemnity*.

The remaining issue is the allocation of the cost of defense between the two. Home Indemnity contends that it is not required to pay any costs incurred in connection with the Redford action prior to Twin City's demand on June 4, 1984. But Home Indemnity's obligation to defend commenced in March, 1982, when it received notice of the Redford action, not in June, 1984, when a formal demand was made.

Home Indemnity also contends that because the policies provide concurrent coverage, its obligation to pay for the costs of defense is limited to a *pro rata* portion of those costs. The insurance agreements do not provide concurrent coverage. Where there is no concurrent coverage, "each insurer owing ... a defense ... is required to contribute to the costs of defense in equal shares with any other insurer also obligated to defend ... in that case." *Pacific Indemnity*, 766 F.2d at 768. Home Indemnity is liable for one-half of the reasonable costs and expenses that have been or will be incurred in connection with the Redford action.

## COUNT IV—FEES AND COSTS INCURRED IN CONNECTION WITH THE INSTANT DECLARATORY JUDGMENT ACTION

■ Twin City seeks to recover costs expended, including attorneys' fees, in bringing this declaratory judgment action. Whether it can recover these costs depends on state law. *Ayleska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 259 n. 31, 95 S.Ct. 1612, 1622 n. 31, 44 L.Ed.2d 141 (1975); *Montgomery Ward & Co., Inc. v. Pacific Indemnity Co.*, 557 F.2d 51 (3d Cir.1977). In general, Pennsylvania follows the American rule precluding the award of attorneys' fees in the absence of statutory or contractual obligation. *Fidelity-Philadelphia Trust Co. v. Philadelphia Transportation Co.*, 404 Pa. 541, 548, 173 A.2d 109, 113 (1961); *Smith v. Equitable Trust Co.*, 215 Pa. 413, 417, 64 A. 591, 592 (1906). However, a court may require a party to pay another party's counsel fees if that party's conduct during the pendency of the matter was "dilatory, obdurate, or vexatious." 42 Pa.C.S.A. § 2503(7). *See Brenckle v. Arblaster*, 320 Pa. Super. 87, 466 A.2d 1075 (1983).

But even absent statutory authority, a Pennsylvania insured who is forced to bring a declaratory judgment action to establish the insurer's duty to defend a third-party action may recover attorneys' fees for defending the action and for prosecuting the declaratory judgment action if the insurer has refused to defend the insured in bad faith. *Kelmo Enterprises v. Commercial Union Ins.*, 285 Pa.Super. 13, 21, 426 A.2d 680, 684–85 (1981). This exception to the general rule as a matter of public policy is in order to prevent an insurer from frustrating the rights of the insured by forcing the insured to bring a declaratory judgment action when the refusal to defend was unreasonable and in bad faith.

Although Home Indemnity had a duty to defend when it received notice of the state action, Home Indemnity's failure to defend cannot be considered in bad faith prior to June, 1984, when the first demand on Home Indemnity in connection with the action was made. The only issue is whether Home Indemnity acted in bad faith when it refused to assume the defense in August, 1984 in response to Twin City's demand.

Relying on *Federal Rice*, Home Indemnity reasonably (but erroneously) believed it had no obligation to defend or indemnify The Latham. Because of the timing of Twin City's demand (subsequent to the adverse verdict at trial), Home Indemnity reasonably (but erroneously) believed that the doctrines of estoppel and/or waiver barred Twin City from claiming that Home Indemnity had a duty to defend or indemnify The Latham. Under these circumstances, the court finds that Home Indemnity's refusal to defend was not in bad faith. As to Count IV, summary judgment is entered in favor of defendant.

## COUNT V—PUNITIVE DAMAGES

█ Twin City contends it is entitled to punitive damages as a result of Home Indemnity's alleged bad faith in denying its contractual obligation to defend The Latham. But Twin City is not in contractual privity with Home Indemnity nor was it a third-party beneficiary of Home Indemnity's insurance contract, so that it cannot seek damages for breach of contract. The Latham cannot seek damages because it is no longer a party to this action. In any event, punitive damages are inappropriate; for the reasons stated previously, Home Indemnity's failure to defend was not in bad faith.

## PREJUDGMENT INTEREST

█ Plaintiff contends that it is entitled to prejudgment interest on the costs of defense. Home Indemnity's failure to defend The Latham constituted a breach of contract but Twin City is neither a party nor a third-party beneficiary to the Home Indemnity-Latham agreement so that it cannot seek damages for a breach of contract. The Latham moved for its dismissal from this action so that this declaratory judgment could remain in federal court. That dismissal precludes awarding it prejudgment interest.

## ORDER

AND NOW, this 30th day of December, 1986, upon consideration of cross-motions for summary judgment filed by the parties, memoranda in support thereof and in opposition thereto, oral argument on the cross-motions, and post-argument memoranda submitted by both parties, and for the reasons set forth in the foregoing Memorandum, it is ORDERED that:

1. On Count I of plaintiff's complaint, summary judgment is GRANTED in favor of plaintiff and against defendant.

2. On Count II of plaintiff's complaint, summary judgment is GRANTED in favor of plaintiff and against defendant. Home Indemnity must indemnify The Latham for any final adverse judgment in the Redford case to a maximum of $100,000; Twin City must indemnify The Latham for any final adverse judgment in the Redford case in excess of $100,000.

3. On Count III of plaintiff's complaint, Home Indemnity is liable for one-half the reasonable costs and expenses that have been or will be incurred in connection with the Redford action.

4. On Count IV of plaintiff's complaint, summary judgment is GRANTED in favor of defendant and against plaintiff.

5. On Count V of plaintiff's complaint, plaintiff's demand for relief in the form of punitive damages is DENIED.