# Lupfer *v.* Baldwin Locomotive Works, Appellant.

*Workmen's compensation—Suicide following accident.*

A widow is entitled to compensation for the death of her husband, where it appears that the deceased shot himself while in a state of delirium or frenzy, without rational knowledge of the physical consequences of his act, and that his condition was due to an injury received in the course of his employment eight days before his death.

Argued January 10, 1921. Appeal, No. 90, Jan. T., 1921, by defendant, from order of C. P. No. 4, Phila. Co., Dec. T., 1919, No. 6774, sustaining decision of Workmen's Compensation Board, in case of Edythe N. Lupfer v. Baldwin Locomotive Works. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART and SADLER, JJ. Affirmed.

Appeal from affirmance of award of referee by Workmen's Compensation Board. Before AUDENRIED, P. J.

The opinion of the Supreme Court states the facts.

The court affirmed the decision of the board. Defendant appealed.

*Error assigned,* inter alia, was order, quoting it.

*Benjamin O. Frick,* with him *Prichard, Saul, Bayard & Evans,* for appellant.—Even under the facts found by the referee, the appellee is not entitled to compensation: Scheffer v. R. R., 105 U. S. 249; Daniels v. R. R., 183 Mass. 393.

*J. Morris Yeakle,* for appellee, was not heard.

PER CURIAM, February 14, 1921:

This is an appeal from the affirmance of an award by the Workmen's Compensation Board, and, subsequently,

by the court below. The learned president judge of the latter tribunal correctly disposed of the case in the following excerpts from his opinion: "Donald LeRoy Lupfer died by his own hand. The referee awarded compensation to his widow, on the theory that, although Lupfer's death was self-inflicted, his act was not intentional, inasmuch as he was delirious at the time, and had become so as the result of a physical injury accidentally sustained while on duty in the service of the defendant. ......On July 23, 1919, while......employed as an electrician, Lupfer accidentally received a shock......, which 'doubled up his arms and twisted him over'; he complained of pain in his side, but returned to his task. He worked on the next two days, and reported for work on Saturday, July 26th, but quit very soon, as he was too ill to do anything......Lupfer shot himself at his home ......on Thursday, July 31, 1919, at eleven o'clock a. m., while his wife was temporarily absent from his room. ......On July 30th, Lupfer had been delirious...... The attending physician saw him last on the morning of the suicide; he was then worse than he had been, and was 'becoming irrational.' His temperature was 103, and he was suffering from pleurisy and pneumonia [the latter resulting from the former]. His physician thought that his mental condition was such that he feared he might jump out of the window......The pain in Lupfer's right side was intense; he could not sleep or lie down. He said, on the morning on which he killed himself, 'My God! I cannot stand this much longer!' ......His infection with pleurisy was probably the result of the lowering of Lupfer's vitality as the result of an electric shock, or the result of an irritation or injury to his chest......Lupfer's tenth rib, on his right side, was broken; that rib was immediately over the lung attacked by pleurisy......There is evidence on which a jury might have reached the conclusion that Lupfer killed himself while delirious from the poison in his system and frantic with the terrific pain with which he

was suffering. It cannot be said that the findings of the referee were wholly without support......[Furthermore] Lupfer's death can fairly be said to have ensued from the 'resultant effects of the violence' sustained by the 'physical structure of his body' through the electrical shock that he received, whether that caused the fracture of his rib and the consequent injury to his chest or merely so reduced his vitality as to render him liable to infection."

Although not couched in these precise words, the various statements of the referee, when read together, are tantamount to a finding that deceased killed himself while possessed by an uncontrollable insane impulse, or while in a delirium, or frenzy, without rational knowledge of the physical consequences of his act. This, with the other findings, already indicated, is sufficient to sustain the award; for we agree with the court below that "it is possible to point out evidence (not perhaps the strongest or most persuasive, but still tangible evidence) to support every finding of the referee, approved by the board."

The assignments of error are overruled and the judgment is affirmed.