**FEDERAL RICE DRUG COMPANY, a corporation, Appellant in No. 19,540,**

v.

**QUEEN INSURANCE COMPANY OF AMERICA, a corporation, Appellant in No. 19,541.**

**Nos. 19540, 19541.**

United States Court of Appeals, Third Circuit.

Argued Nov. 30, 1971.

Decided June 29, 1972.

John A. Metz, Jr., Metz, Cook, Hanna & Kelly, Pittsburgh, Pa., for appellant in No. 19540 and appellee in No. 19541.

Kim Darragh, Meyer, Darragh, Buckler, Bebenek & Eck, Pittsburgh, Pa., for appellant in No. 19541 and appellee in No. 19540.

Before SEITZ, Chief Judge, and KALODNER and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

The appellant, Federal Rice Drug Company (the insured) in this diversity action brought suit against Queen Insurance Company of America, appellee and cross appellant (the insurer) for wrongful denial of coverage under a Comprehensive Business Policy. In a non-jury trial the district court held that the insured was not entitled to indemnity under the policy with respect to the claim in issue, but that the insurer should have undertaken defense of the claim. It entered judgment in favor of the insured for the amount of the counsel fees incurred by the insured in defense of the claim, and in favor of the insurer on its demand for indemnity in the amount of $24,500 paid in settlement of the claim.

The claim in issue was made on behalf of the Estate of Gerson N. Rogow (the decedent), a former employee of the insured who on July 19, 1966 committed suicide in the insured's place of business by hanging himself. The decedent had been discharged by the insured on July 5, 1966 following a long series of disputes with his superior over his job performance.

On July 17, 1967 decedent's estate filed suit in the Court of Common Pleas of Allegheny County against the insured. That complaint alleged that beginning in January 1966 the president of the insured, acting in that capacity and within the scope of his employment began a course of criticizing, embarrassing, harassing and humiliating the decedent, alone and in front of business associates, friends, and subordinates, and of placing decedent in situations calculated to create great emotional distress, for the ultimate purpose of forcing decedent to relinquish his employment with the insured. These actions, it was alleged, caused decedent to suffer great emotional and physical stress, which prevented him from realizing the nature of his actions, made it impossible to resist an impulse created by an insanity, deprived him of capacity to govern his conduct, and caused decedent to commit suicide. Decedent's death was alleged to be the direct and proximate result of the

intentional, willful, wanton and/or negligent conduct of the insured.

The insured gave prompt written notice of the action by decedent's estate and sent the insurer a copy of the complaint. On August 28, 1967 the insurer by letter denied coverage, writing:

"We have thoroughly reviewed our policy coverage and conclude that there is no coverage based on Exclusion F and G in the liability section of the policy. I would recommend that this matter be referred to the compensation insurers of Federal Rice Drug Company." (Exhibit B, 11a).

On September 20, 1967 counsel for the insured wrote to the insurer:

"In behalf of Federal Rice Drug Company, your insured, you are hereby notified that said insured will expect and demand strict compliance on your part with the terms of the policy . . . both as to defense of the action and coverage of the damages and in all other respects whatsoever." (Exhibit C, 12a).

The insurer refused to defend or to indemnify. The attorney for the insured thereupon undertook investigation and defense. On March 12, 1968 the claim of decedent's estates was settled for $24,500.00. The insured demanded this sum plus $3,000 incurred for counsel fees. The demand was refused and the instant suit resulted.

The Comprehensive Business Policy (Exhibit A, 7a) contains these insuring agreements:

"I.  COVERAGE A—BODILY INJURY LIABILITY:

To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person [and caused by accident].[1]

II.  DEFENSE,      SETTLEMENT, SUPPLEMENTARY      PAYMENTS:

With respect to such insurance as is afforded by this endorsement, the Company shall:

(a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim as it deems expedient. . . . "

The insured contends that the claim by decedent's estate fell within insuring agreement I, Coverage A, and that under insuring Agreement II(a) the insurer was obliged to defend. The insurer relies on these policy exclusions:

"This endorsement does not apply:

\*     \*     \*     \*     \*     \*

(f) under coverage A, to any obligation for which the insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment, compensation or disability benefits law, or under any similar law;

(g) under coverage A, except with respect to liability assumed by the insured under a contract as defined herein, to bodily injury or to sickness, disease or death of any employee of the insured arising out of and in the course of employment by the insured."

The insurer contends that the claim by decedent's estate falls within one or both of these exclusions.

The district court said with respect to exclusion (f), "There is no difficulty in holding that under the (f) exclusion there is no liability on defendant's part." (75a). There is no other discussion of the (f) exclusion, and this rather cryptic sentence gives no clue to the

___

1.  The bracketed language appears in the insuring agreements but is expressly deleted in an endorsement.

court's rationale. Possibly what was meant was a finding that the complaint of the decedent's estate set forth a claim under the Pennsylvania Workmen's Compensation Statute. Pa.Stat.Ann. tit. 77, § 431 (Purdon's Supp. 1971). If so, that should have ended the matter, for such a claim is excluded under exclusion (f) and covered by coverage A of the standard Workmen's Compensation and Employer's Liability Policy.[2] But the court went on to say: "This Court finds, however, that there is no liability under either (f) or (g), but (g) is the one that presents the troublesome issue." (75a). It discussed the factual allegations of the estate's complaint pointed out that death occurred two weeks after employment terminated, and concluded:

"But the cause of his death according to the allegations of the complaint on which suit was brought in the Common Pleas Court had their origin in the course of his employment and in the words of (g) exclusion it was sickness or disease 'arising out of and in the course of his employment by the insured.' " (76a).

Thus, the court held exclusion (g) applied. It is not exactly clear from the opinion whether the intended holding was that both exclusions applied, or that only exclusion (g) was operative.

Exclusions (f) and (g) of the insurer's Comprehensive Business Policy, a public liability policy, are substantial equivalents of coverages A and B of the standard Workmen's Compensation and Employer's Liability Policy. In the latter policy coverage A insures against liability under the workmen's compensation law. Coverage B insures against sums an employer becomes liable to pay because of bodily injury or death sustained by an employee of the insured arising out of and in the course of his employment.[3] The insuring agreements of the Workmen's Compensation and Employer's Liability Policy are designated to meet the situation created by the commonly enacted workmen's compensation statutes. Under most of these statutes an employee has a theoretical election either to be covered by the statute, thereby obtaining the benefit of its absolute liability but accepting its limitations on payment, or to reject coverage and rely on the employer's common law liability. Pa.Stat.Ann. tit. 77, § 431 (Purdon's Supp. 1971). Coverage A of the standard Workmen's Compensation and Employer's Liability Policy insures against liability to those employees who elect for Workmen's Compensation Act coverage. In the insurer's Comprehensive Business Policy exclusion (f) excludes the same liability. Coverage B of the Workmen's Compensation and Employer's Liability Policy insures against liability to employees who would be covered by the Workmen's Compensation Act except for the fact that they elected against coverage. That this is the case is clear from the use of the language "arising out of and in the course of his employment." These words, though not those used in the Pennsylvania statute, Pa.Stat.Ann. tit. 77, § 431 (Purdon's Supp. 1971), are those used in the work-

---

2. The provisions of the standard Workmen's Compensation and Employer's Liability Policy were not called to the attention of the district court but were furnished to this court by counsel following the argument of the appeal. That policy provides:

"COVERAGE A—WORKMEN'S COMPENSATION
To pay promptly when due all compensation and other benefits required of the insured by the workmen's compensation law."

3. The standard Workmen's Compensation and Employer's Liability Policy provides:

"COVERAGE B—EMPLOYERS' LIABILITY
To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury by accident or disease, including death at any time resulting therefrom, sustained in the United States of America, its territories or possessions, or Canada by any employee of the insured arising out of and in the course of his employment by the insured either in operations in a state designated in item 3 of the declarations or in operations necessary or incidental thereto."

men's compensation statutes of a majority of the states. *See generally* National Industrial Conference Board, Workmen's Compensation Acts in the United States 5 (1923). The same language is used in exclusion (g) of the insurer's Comprehensive Business Policy, and undoubtedly is intended to have the same meaning. We read exclusion (f) to exclude liability to covered employees electing for workmen's compensation and exclusion (g) to exclude liability to covered employees electing against workmen's compensation and we read the exclusions, therefore as coextensive. Together they are intended to exclude only such claims as would fall within the coverage of a standard Workmen's Compensation and Employer's Liability Policy. Apparently the insurer's claims manager read the exclusions the same way, for in his letter of August 28, 1967 quoted above, he recommended referring the claims to the insured's compensation insurer.

Thus the case, as we see it, turns on whether or not the claim asserted by the decedent's estate would be cognizable under the Pennsylvania Workmen's Compensation Act. If it would, there is no coverage. If it would not, neither exclusion (f) nor exclusion (g) applies, and there is coverage under Coverage A of the insuring agreements.

■ The Pennsylvania Workmen's Compensation Act provides that ". . . no compensation shall be paid when the injury or death is intentionally self inflicted, . . . but the burden of proof of such fact shall be upon the employer. . . ." Pa.Stat. Ann. tit. 77, § 431 (Purdon's Supp. 1971). Construing this statute the Pennsylvania courts have held that where, as here, suicide is admitted by the claimant, the burden is on the claimant to show that the decedent killed himself while possessed by an uncontrollable insane impulse, or while in a delirium or frenzy, as a direct result of the accident without rational knowledge of the physical consequences of his act. Gasperin v. Consolidation Coal Co., 293 Pa. 589, 143 A. 187 (1928); Lupfer v. Baldwin Locomotive Works, 269 Pa. 275, 112 A. 458 (1921); Blasczak v. Crown Cork & Seal Co., 193 Pa.Super. 422, 165 A.2d 128, 129 (1960); Widdis v. Collingdale Millwork Co., 169 Pa.Super. 612, 614, 84 A. 2d 259, 260 (1951); Kasman v. Hillman Coal & Coke Co., 149 Pa.Super. 263, 266, 27 A.2d 762, 763 (1942); Cubit v. Philadelphia, 138 Pa.Super. 325, 326, 10 A. 2d 853 (1940). The allegations of the complaint by decedent's estate meet part of the test for taking a suicide outside the bar of the "intentionally self inflicted" provision, § 431 of the Pennsylvania Workmen's Compensation Act. It is alleged that the stress suffered by decedent "prevented him from realizing the nature of his actions and/or made it impossible for him to resist an impulse created by insanity, depriving him of his capacity to govern his conduct in accordance with reason, and which ultimately resulted in and caused the decedent to commit suicide by violently hanging himself. . . ." (Complaint, ¶ 6, 82a). But in each of the insane suicide cases referred to above the decedent had, in the course of his employment, suffered a traumatic injury allegedly producing the insanity, which traumatic injury qualified as an "accident." This is significant, for unlike many workmen's compensation statutes which cover injuries "arising out of and in the course of employment" the Pennsylvania statute is more narrowly drawn. It covers only injuries "by an accident, in the course of his employment." Pa.Stat.Ann. tit. 77, § 431 (Purdon's Supp. 1971). "Injuries" under the Pennsylvania statute include ". . . only violence to the physical structure of the body, and such disease or infection as naturally results therefrom. . . ." Pa.Stat.Ann. tit. 77, § 411 (1952). Emotional stress is not such a fortuitous, untoward or unexpected happening as to constitute an accident. McGaw v. Town of Bloomsbury, 214 Pa.Super. 342, 257 A.2d 622 (1969);

Bussone v. Sinclair Refining Co., 210 Pa.Super. 442, 234 A.2d 195 (1967) (heart attack precipitated by a violent argument); Everitt v. Baker Refrigerator Co., 197 Pa.Super. 611, 180 A.2d 114 (1962); Hoffman v. Rhoads Construction Co., 113 Pa.Super. 55, 172 A. 33 (1934). *But Compare* Van Ness v. Borough of Haledon, 136 N.J.L. 623, 56 A. 2d 888 (E. & A. 1948).

■ The complaint of decedent's estate alleges no more than that by purely verbal harassment in the course of decedent's employment his employer caused stress which resulted in an emotional condition resulting in an insane suicide. We do not believe that the Pennsylvania courts would hold the resulting death to be compensable under that State's Workmen's Compensation Statute, for although it arose out of employment it did not result from an accident.

■ We have said above that exclusions (f) and (g) are coextensive in the sense that both were intended to cover employer liability: exclusion (f) the liability to an employee electing workmen's compensation coverage, and exclusion (g) the liability to an employee electing non coverage. There is no contention by the insurer that the decedent had elected against coverage. This being the case exclusion (g) is irrelevant. It should not be read more broadly than its intended purpose. The fact that the insurer chose the more common workmen compensation language "arising out of and in the course of his employment" rather than the Pennsylvania statutory language "accident, in the course of his employment" should not permit a construction of the exclusion which extends it to situations not contemplated when it was issued. *See* Clearfield Development Co. v. Devonian Gas & Oil Co., 385 Pa.

248, 122 A.2d 718 (1956). If the claim was a workmen's compensation claim the workmen's compensation carrier should afford coverage. If the claim was a tort claim falling outside the workmen's compensation statute the insurer's Comprehensive Business Policy afforded coverage under its Coverage A.

Since the complaint of decedent's estate alleged an intentional or a negligent tort falling outside the coverage of the Pennsylvania Workmen's Compensation Statute, the district court erred in holding that the Comprehensive Business Policy excluded coverage under insuring agreement I, Coverage A. Since there was coverage under Coverage A, the district court was correct in its conclusion that there was a duty to defend under insuring Agreement II(a). Two questions as to the amount of an appropriate judgment remain. The district court found that the amount of attorneys fees incurred by the insured were fair and reasonable. The fees incurred totalled $3,000, but judgment was entered, apparently by inadvertence, for $3,500. There was testimony as to the reasonableness of the $24,500 settlement, but because the district court found no coverage it made no findings of fact on that issue or indeed on the nature of the claim being settled. Thus a remand is required for findings of fact as to the appropriate amount of the judgment to be entered against the insurer.

The judgment of the district court will be vacated and the case remanded for the entry of a judgment in favor of the appellant Federal Rice Drug Company and against appellee-cross appellant Queen Insurance Company of America for indemnity and for the attorneys fees incurred in defending the claim of the Rogow Estate, in an amount to be determined by the district court.