FORUM INSURANCE CO., an Illinois Corporation

v.

ALLIED SECURITY, INC., a Pennsylvania corporation; Liberty Mutual Insurance Company, a Massachusetts corporation, and Norman F. Trahey, Administrator of the Estate of Ronald F. Trahey, Deceased.

Appeal of ALLIED SECURITY, INC., Appellant in No. 88–1583.

Appeal of LIBERTY MUTUAL INSURANCE COMPANY, Appellant in No. 88–1596.

Nos. 88–1583, 88–1596.

United States Court of Appeals, Third Circuit.

Argued Dec. 5, 1988.

Decided Jan. 24, 1989.

Rehearing and Rehearing In Banc Denied Feb. 15, 1989.

William Pietragallo, II (argued), Pietragallo, Bosick & Gordon, Pittsburgh, Pa., for Allied Security, Inc.

Lawrence L. Robinson (argued), Thompson & Pennell, Philadelphia, Pa., for Liberty Mut. Ins. Co.

Stephen W. Trout (argued), Murphy, Taylor & Adams, Philadelphia, Pa., for Forum Ins. Co.

Before SLOVITER and BECKER, Circuit Judges and BARRY, District Judge.*

OPINION OF THE COURT

SLOVITER, Circuit Judge.

I.

Vito Vinciguerra, a security guard, attacked and killed Ronald F. Trahey, his fellow employee, while both were on assignment for their employer, Allied Security, Inc. (Allied). In a wrongful death action brought by the estate of Trahey against Allied in the Philadelphia County Court of Common Pleas, the jury found

* Hon. Maryanne Trump Barry, United States District Court for the District of New Jersey, sitting by designation.

that Vinciguerra killed Ronald Trahey "because of reasons personal to him and not directed against the victim as an employee or because of his employment." App. at 278. The parties agree that this finding established that the killing was not covered by the Pennsylvania Workmen's Compensation Act, which provides that "an injury caused by an act of a third person intended to injure the employe because of reasons personal to him, and not directed against him as an employe or because of his employment" does not qualify as an "injury arising in the course of employment" for purposes of the Act. Pa.Stat.Ann. tit. 77, § 411(1) (Purdon Supp.1988). The jury found that negligence on the part of Allied "in the hiring, retention, placement, supervision or control" of Vinciguerra was a substantial factor in Trahey's death, and assessed $800,000 in damages against the company. App. at 278–79.

Forum Insurance Company (Forum) insured Allied under a Security Guard Policy which covered its obligation to pay damages for personal injury or property damage arising out of its security guard services and by reason of any negligence or dishonesty committed by its employees while providing security guard services. Forum assumed defense of Allied in the Trahey estate suit under a reservation of rights. It then brought a diversity suit for a declaratory judgment against Allied, the Trahey estate, and Liberty Mutual Insurance Company (Liberty), which had issued a "Workers' Compensation and Employers' Liability" policy to Allied. Forum asked the court to declare that Forum had no obligation to provide a defense or coverage of the estate's claim, arguing that the wrongful death suit came within the coverage of Liberty's policy and was expressly excluded from coverage under the Forum policy. The district court agreed with Forum's contentions and granted summary judgment in its favor, holding Forum had no obligation to provide a defense or coverage to Allied and that Liberty is liable for the reasonable costs and expenses that

have been or will be incurred in connection with the defense of the Trahey action. 690 F.Supp. 390.

This appeal by Allied and Liberty requires us to conduct a plenary review of the district court's construction of the Liberty and Forum insurance policies.[1] Under Pennsylvania law, we must initially look at the policies and determine, as a matter of law, whether the language is unambiguous. *Commercial Union Ins. Co. v. Pittsburgh Corning Corp.*, 789 F.2d 214, 217 (3d Cir. 1986). If the language of the insurance policies is unambiguous, then we must construe the language as a matter of law. *Id.*

## II.

The insurance policy issued by Forum to Allied on September 1, 1981 provides coverage, *inter alia*, for "all sums for which the insured shall become legally obligated to pay as damages ... by reason of any negligent act, error or omission committed by the Named Insured in the conduct of Security Guard Services, or any act of dishonesty committed by an employee of the Named Insured while in the course of employment providing Security Guard Services." App. at 9. The policy excludes claims "arising out of ... (2) Any obligation for which the Named Insured or any carrier as his insurer may be held liable under any workers compensation, unemployment compensation or disability benefits law, or under any similar law; (3) Bodily injury, sickness or disease, including *death* or disability at any time *resulting therefrom to any employee* of the Named Insured *arising out of and in the course of his employment* by the Named Insured or to any obligation of the Named Insured to indemnify another because of damages arising out of such injury." App. at 10 (emphasis added). The policy limit of the Forum insurance is $1,000,000.

The insurance policy issued by Liberty provides for two types of coverage. Under Coverage A, "Workers' Compensation,"

---

1. The Trahey estate was originally an appellant but has since settled the underlying litigation and withdrawn its appeal.

Liberty agreed to cover all compensation required by "the workers' compensation law." App. at 46. Under Coverage B, "Employers' Liability," Liberty agreed "[t]o pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury by accident or disease, including death at any time resulting therefrom, (a) sustained ... by any employee of the insured *arising out of and in the course of his employment by the insured....*" *Id.* Coverage B contains a $100,000 cap.

The district court concluded that the death of Trahey arose "out of and in the course of his employment" and therefore that his estate's wrongful death claim fell within Coverage B of the Liberty policy, and was excluded by exclusion (3) from the Forum policy. The court, applying the canon of contract construction that contracts should be read to give effect to all provisions, reasoned that exclusion (3) of the Forum policy was intended to reach injuries other than those covered by workers' compensation; otherwise, exclusions (2) and (3) would be synonymous, and clause (3) would be a superfluity. Finding the allegations contained in the complaint filed in the wrongful death suit to be covered by Liberty's and not Forum's policy, the district court held that Liberty was obligated to indemnify Allied to the extent of its policy limit, and to pay the costs and expenses that had been or would be incurred in defending Allied against the Trahey suit.

### III.

We consider first Allied's argument that the district court erred in holding that the injury to and subsequent death of Trahey was one "arising in the course of his employment." We must apply Pennsylvania law. Fortunately, there is a Pennsylvania Supreme Court decision directly interpreting the meaning of the clause "arising out of and in the course of employment." In *McCabe v. Old Republic Insurance Co.,* 425 Pa. 221, 228 A.2d 901 (1967), McCabe, the employer, sought to recover from the insurer part of the judgment McCabe was required to pay when one of its employees was injured in the construction of a trench. The policy excluded from coverage liability on the part of McCabe for injuries or death of an employee "arising out of and in the course of his employment by the insured."

McCabe, as Allied here, attempted to argue that this term was ambiguous. The Supreme Court rejected that contention, holding instead that "[w]e cannot agree that any ambiguity exists." *Id.* 228 A.2d at 903. The Court held that " 'arising out of means causally connected with, not proximately caused by. 'But for' causation, i.e., a cause and result relationship, is enough to satisfy this provision of the policy." 425 Pa. at 224, 228 A.2d at 903 (emphasis deleted) (quoting *Manufacturers Casualty Ins. Co. v. Goodville Mut. Casualty Co.,* 403 Pa. 603, 607–08, 170 A.2d 571, 573 (1961)).

The dissent's suggestion that the "but for" test enunciated in *McCabe* is not the law of Pennsylvania is simply wrong. In the first place, the *McCabe* court's adoption of a "but for" test is no less precedential because it enters that opinion through a quotation of another case. We must assume, particularly in a diversity case, that the Pennsylvania Supreme Court meticulously chose the language it adopted.

In the second place, even one of the Superior Court cases on which the dissent relies (all of which dealt with automobile insurance rather than employment insurance) recognizes the viability of the "but for" test. In *Erie Insurance Exchange v. Eisenhuth,* 305 Pa.Super. 571, 574, 451 A.2d 1024, 1025 (1982), the Superior Court cited *Manufacturers Casualty* for the same proposition for which it was cited in *McCabe,* referring expressly to the "but for" standard.

Finally, we find no basis in Pennsylvania employment law for the restrictive approach the dissent's analysis would apply to injuries "arising out of and in the course of employment." In contrast, under our construction of the relevant language, Trahey's injury would have been covered as arising out of his employment for purposes of workers' compensation were it not for a specifically applicable exclusion.

Allied concedes that both Trahey and his assailant were at work at the time of the incident. Thus, although the jury found that Vinciguerra's attack was not directed to Trahey "as an employee," this does not mean that the injury did not arise out of Trahey's employment in the sense used by Pennsylvania. Trahey's death clearly arose out of his employment under Pennsylvania law, since he was killed by a fellow employee while both were on assignment as security guards for their employer. The district court did not err in so holding.

## IV.

It follows from our holding that Trahey's death arose out of and in the course of his employment that the estate's claim falls within exclusion (3) of Forum's policy expressly excluding coverage for Allied's obligations to an employee "arising out of and in the course of his employment," and the district court so held. Appellants argue, however, that exclusion (3) is no more extensive than the Pennsylvania Workmen's Compensation Act, so that it excludes from the policy only those injuries which are covered under the Workmen's Compensation statute. They rely on *Federal Rice Drug Co. v. Queen Insurance Co.*, 463 F.2d 626 (3d Cir.1972).

In *Federal Rice*, the estate of an employee who had committed suicide settled its suit against the employer for intentional or negligent infliction of emotional distress. The employer's insurance company had declined coverage under its Comprehensive Business Policy on the basis of two exclusion provisions, (f) and (g), the language of which were substantially similar to exclusions (2) and (3) of the Forum policy. We held that the insurance policy covered the claim because neither of the exclusions applied.

We reasoned as follows: Exclusions (f) and (g) in the Comprehensive Business Policy were the substantial equivalents of Coverages A and B of the standard Workmen's Compensation and Employer's Liability Policy. *Id.* at 629. Coverage A insured against liability under the workmen's compensation law, and exclusion (f) excluded

claims covered by the workmen's compensation law. However, at the time *Federal Rice* was decided, employees in Pennsylvania were permitted to elect for or against workmen's compensation coverage. Thus, we construed Coverage B in the Workmen's Compensation and Employer's Liability Policy as insuring employers' liability to employees who would be covered by workmen's compensation except for the fact that they elected against coverage, and we construed exclusion (g) in the Comprehensive Business Policy (comparable to exclusion (3) here) as excluding that same liability.

The claim in *Federal Rice* was covered by the Comprehensive Business Policy because neither exclusion applied. The employee had elected coverage under workmen's compensation, thereby rendering Coverage B in one policy and exclusion (g) in the other irrelevant. *Id.* at 631. Coverage A did not apply because an employee's suicide was not covered by workmen's compensation as a result of a specific statutory exclusion. Since exclusion (f) only excluded that which was included in Coverage A, exclusion (f) did not operate to relieve the insurer from its obligation to cover Federal Rice's claim. *Id.*

In 1974, the Pennsylvania workmen's compensation statute was amended to make coverage mandatory, so that employees no longer could elect against coverage. Act of December 5, 1974, P.L. 782, No. 263, § 3, codified at Pa.Stat.Ann. tit. 77, § 431 (Purdon Supp.1988). Liberty's policy coverage and Forum's equivalent policy exclusions must be given meaning in the legal context in which they were written. *See Twin City Fire Ins. Co. v. Home Indem. Co.*, 650 F.Supp. 785, 790–91 (E.D.Pa.1986). As *Federal Rice* instructs us, we must interpret Forum's exclusions as correlative to Coverages A and B of the Liberty policy.

The Trahey estate's claim was not covered by the workers' compensation law and thus is not within Coverage A of Liberty Mutual's policy, nor can Forum disclaim coverage under exclusion (2) of its policy (excluding any obligation for which the insured may be held liable under any work-

ers' compensation law). On the other hand, Coverage B of the Liberty Mutual policy expressly undertakes "[t]o pay on behalf of the insured [Allied Security, Inc.] all sums which the insured shall become legally obligated to pay as damages because of bodily injury ... including death at any time resulting therefrom, (a) sustained ... by any employee of the insured arising out of and in the course of his employment by the insured...." In light of our holding that Trahey's death arose out of and in the course of his employment, this language would appear to cover precisely the Trahey estate's claim against Allied. Consequently, that claim is excluded under the correlative language in exclusion (3) of Forum's Comprehensive Business policy. Surprisingly, the dissent offers no persuasive reason why, accepting *arguendo* our construction of "in the course of his employment," the Liberty language is inapplicable.

Because exclusion (2) of Forum's policy now suffices to exclude from the policy claims for injuries that fall within the Pennsylvania's Workmen's Compensation Act, exclusion (3) would have no meaning if it is also limited to injuries that fall within the same statute, as the appellants argue. *See Restatement (Second) of Contracts* § 203(a) & comment b (1981). Allied argues that the language of Forum's policy was designed with jurisdictions other than Pennsylvania in mind, and that exclusion (3) would not be subsumed under exclusion (2) in jurisdictions in which workers' compensation statutes do not provide the exclusive remedy for employees. It notes that in some states, notwithstanding the exclusivity of the workers' compensation remedy, an employer might be liable for a derivative claim by a wife for loss of consortium or for contributions by third parties for injuries to workers. Allied thus argues that Forum's exclusion (3) is designed to preclude coverage for such claims. This argument does not help Allied in this case because the Trahey estate's claim also falls within that category since the Pennsylvania Workmen's Compensation Act excludes from coverage third-party injuries to employees for personal reasons, such as that

inflicted here. Thus, even though Trahey's injuries would otherwise be deemed to arise out of and have been incurred in the course of employment, they were not covered by workers' compensation.

Our interpretation gives effect to all of the clauses and all the language in the Liberty and Forum policies. Liberty, the workers' compensation carrier through Coverage A, also expressly covers employers' liability through Coverage B for claims that the workers' compensation law excludes although the injuries arose in the course of employment. Forum's policy, the business policy, using substantially the same language, excludes those items expressly covered in the Liberty policy. Indeed, were it not for the happenstance that Forum's policy has a higher coverage amount, it is unlikely that Allied would have invoked Forum's rather than Liberty's policy.

The district court's construction of the two insurance policies was therefore correct, and its order in that respect will be affirmed.

## V.

Appellants argue that the district court erred in holding that Forum was not responsible for the costs and expenses incurred by Forum in defending Allied in the Trahey estate suit. Although the district court's opinion does not discuss the issue, it appears that the district court believed that the costs of defense would follow the policy coverage, so that the insurer which must indemnify must also bear the costs of defense. For the reasons that follow, we cannot accept this logic.

Under Pennsylvania law, "[i]t is settled ... that an insurer's obligation to defend an action against the insured is not necessarily coextensive with its obligation to indemnify the insured." *C.H. Heist Caribe Corp. v. American Home Assurance Co.*, 640 F.2d 479, 481 (3d Cir.1981). Rather, the insurer's duty to defend is broader than its duty to indemnify, and requires the insurer to provide a defense against a claim that " 'might or might not' fall within the

coverage of the policy ... 'until it c[an] confine the claim to a recovery that the policy d[oes] not cover.'" *Cadwallader v. New Amsterdam Casualty Co.*, 396 Pa. 582, 589–90, 152 A.2d 484, 488 (1959) (quoting *Lee v. Aetna Casualty & Surety Co.*, 178 F.2d 750, 752 (2d Cir.1949)).

A component of the duty to defend necessarily includes bearing the costs and expenses of the defense. Otherwise, an insurer with a policy ultimately held not to cover the claim against its insured would be able to recover its costs of defense from its insured, which would eviscerate the duty to defend.

We have found very little reported case law on the issue of defense costs when two insurers arguably have a duty to defend. In this case, Liberty was also potentially liable for the claims alleged in the Trahey estate complaint. The fact that Allied chose to tender the defense of the suit to Forum, the insurer with the highest limit on its liability coverage, cannot absolve Liberty from its coextensive duty to defend.

In *Pacific Indemnity Co. v. Linn,* 766 F.2d 754, 768 (3d Cir.1985), where more than one policy potentially covered the claims, we held that the district court properly allocated the defense costs among various insurers. Although the situation here is somewhat different, in that we have found that only Liberty's policy covers the claim, we nonetheless hold that because both Forum and Liberty had an obligation to defend, the costs of the defense Forum undertook should be apportioned between them. *See also Twin City Fire Ins. Co. v. Home Indemnity Co.*, 650 F.Supp. 785, 792 (E.D.Pa.1986); 1A R. Long, *The Law of Liability Insurance*, § 5.23, at 5–161 (1987). Indeed, Forum agreed at oral argument that this would be an appropriate solution.

## VI.

We will affirm the district court's order holding that Forum's policy does not cover the claim asserted by the Trahey estate. We will vacate that portion of the district court's order that requires Liberty to bear liability for the entire cost of defense and will remand so that the district court can apportion the defense costs between both insurers.

BECKER, Circuit Judge, dissenting in part.

It is not often that a worker who suffers bodily injury (or death) as the result of an incident that takes place while he is on the job is not entitled to worker's compensation. However, as the parties stipulate, this is such a case. Under these circumstances, I simply cannot agree that appellee Forum, which furnished appellant Allied Security with a liability policy that covers Allied for the very kind of liability that the Common Pleas jury here found, should escape responsibility on the basis of a workers compensation-based exclusion in its policy. In my view, none of the grounds assigned by the majority for Forum's exculpation passes muster.

## I.

The first prop of the majority's opinion is its reliance on *McCabe v. Old Republic Insurance Co.*, 425 Pa. 221, 228 A.2d 901 (1967), a reliance I find misplaced. In *McCabe*, the Pennsylvania Supreme Court was faced with a situation where an employee, Sixto Quinones, was killed while engaged in the construction of a sewer when the trench in which he was digging collapsed due to the absence of shoring. The employer, McCabe, paid worker's compensation. Failure to shore constituted a violation of state regulations imposed upon the employer.[1] Quinones' administratix sued the township which had contracted for the building of the sewer. The township impleaded the employer, seeking indemnification. The employer then requested its insurance company to defend. It refused and, after a judgment was awarded in the

---

1. *See Quinones v. Township of Upper Moreland,* 187 F.Supp. 260, 262 (E.D.Pa.1960), *modified,*  293 F.2d 237 (3d Cir.1961).

administratix's action against the township and in the township's indemnity action against the employer, the employer brought suit against the insurance company.

The employer's insurance company argued that its policy, which, like Forum's, disclaimed liability for injury or death to an employee "arising out of and in the course of his employment," did not cover Quinones' death. The employer argued that Quinones' death did not "arise out of his employment" but "out of the absence of shoring in the trench." The Pennsylvania Supreme Court disagreed, arguably suggesting that, in construing the disclaimer term "arising out of employment," a "but for" test was all that had to be satisfied, and that no element of proximate cause had to be shown.

If this proposition constitutes the holding of *McCabe*, and *McCabe* is still good law, it would appear that a "but for" test should be used here and that Forum's exclusion should apply and it should not be liable. That is because "but for" Trahey's employment his death would not have occurred. I have considerable doubt, however, that this proposition constitutes a holding since Quinones' death was so clearly proximately caused by his employment. Furthermore, while *McCabe* may be read as adopting a "but for" test, the opinion does not clearly adopt this test. The phrase "but for" enters the opinion only through a quotation from *Manufacturers Casualty Insurance Co. v. Goodville Mutual Casualty Co.*, 403 Pa. 603, 170 A.2d 571 (1961) (highway accident in which automobile crashed into a horse trailer was one arising out of the ownership, maintenance or use of the horse trailer). Immediately after quoting from *Goodville*, the *McCabe* Court ended the opinion with the following sentence: "Thus the interpretation given to the phrase in *Goodville*, supra, is completely *contra* McCabe's position herein, since there is an obvious casual connection between Quinones' employment and his death." 425 Pa. at 224, 228 A.2d at 903. If one were to choose a catch phrase to summarize *McCabe*, "obvious causal connection"

would therefore seem to be more accurate than "but for."

In the instant case, the causal connection between Vinciguerra's murder of Trahey and Trahey's employment does not seem "obvious," since the jury in Trahey's estate's lawsuit in the Philadelphia County Court of Common Pleas found that Vinciguerra killed Trahey "because of reasons personal to him and not directed against the victim as an employee or because of his employment." Additionally, applying solely a "but for" test with no proximate cause requirement in construing the term "arising out of employment" could lead to untoward results. To take a simple example, suppose that an employee is killed in an automobile collision while driving to work. "But for" his employment he would not have had occasion to be on the road driving to work and the collision would not have occurred. It would seem that under a "but for" construction of the Pennsylvania Supreme Court's holding in *McCabe*, an insurance company with a policy covering damages for injuries "arising out of employment" could be liable for the resulting damages.

I also note that there are post-*McCabe* Pennsylvania cases finding no causation for purposes of an insurance policy, and while none of them involved employee insurance, they do seem to require that a degree of proximate causation be shown. *See Day v. State Farm Mutual Insurance Co.*, 261 Pa.Super. 216, 396 A.2d 3 (1978) (damages incurred in a fistfight after an automobile collision did not arise out of the ownership, maintenance or use of a motor vehicle); *Erie Insurance Exchange v. Eisenhuth*, 305 Pa.Super. 571, 451 A.2d 1024 (1982) (injuries occasioned by bullets fired by a police officer whom the plaintiff was trying to run down with his car did not arise out of the ownership, maintenance or use of a motor vehicle). Therefore, it seems that the Pennsylvania courts themselves have failed to construe *McCabe* as adopting a strict "but for" test in cases involving other types of insurance.

## II.

At all events, I believe that we are bound by the post-*McCabe* decision of this court in *Federal Rice Drug Co. v. Queen Insurance Co. of America*, 463 F.2d 626 (3d Cir.1972). In *Federal Rice*, as the majority notes, this court construed two exclusion clauses in a comprehensive business insurance policy whose language was essentially the same as exclusion clauses (2) and (3) of the Forum policy. At the time *Federal Rice* was decided, Pennsylvania law allowed an injured employee to elect between being covered by the worker's compensation statute or rejecting worker's compensation coverage and retaining the right to bring suit at common law. We concluded that the first exclusion clause (equivalent to Forum's exclusion (2)) was intended to disclaim coverage for any liability under the worker's compensation statute; and that the second exclusion clause (equivalent to Forum's exclusion (3)) was intended to disclaim coverage for any liability for injuries for which damages were sought at common law, but for which damages could have been sought under the worker's compensation law. We thus held that the policy's exclusions (equivalent to Forum's here) were intended solely to disclaim liability for damages arising from injuries for which claims could be brought under worker's compensation law, and that, because of the limited scope of the exclusions, the insurance carrier could not escape liability.

The majority attempts to distinguish *Federal Rice* by reasoning that because the Pennsylvania worker's compensation statute was amended in 1974 to make worker's compensation the exclusive remedy for injuries that it covers, Forum's exclusion (2) now suffices to exclude claims for damages that could be brought under the Pennsylvania's Worker's Compensation Act from coverage. The majority then reasons that Forum's exclusion (3) would have no independent meaning if its exclusionary meaning were limited to claims for injuries that could be brought under the same statute.

The majority's reasoning, in my view, is flawed because, as Allied argues, the language of Forum's policy was apparently not designed solely for use in Pennsylvania but, rather, for use nationwide. Therefore, while the language of Forum's exclusion (3) would just be repetitive of the language of Forum's exclusion (2) in Pennsylvania, it would have an independent meaning in states which still allow employees to elect between being covered by worker's compensation or retaining the right to bring suit at common law.[2]

The majority attempts to counter this argument by asserting that Forum's policy exclusions "must be given meaning in the legal context in which they were written." However, "a standard form may include provisions appropriate only to some of the transactions in which the form is to be used...." Restatement (Second) of Contracts at § 203(a) & comment b (1981). I believe this to be such a case, for the legal context for which Forum's policy was written exists in several states. *See supra* n. 2.

As a result, I believe that *Federal Rice* is indistinguishable from the present case. Since I believe that we are bound by *Federal Rice*, I would apply its holding and conclude that the clauses relied on by Forum only exclude claims that are, or could have been, brought under worker's compensation law. Trahey's claims, of course, could not be. Accordingly, I would find Forum to be liable to Allied for the amount of the damages awarded to Trahey's estate. Conversely, since Liberty's policy uses essentially the same language to define its coverage which Forum's policy uses in creating its exclusions, I would apply *Federal Rice* to conclude that Liberty should not be held liable for the damages awarded to Trahey's estate. Therefore, I would reverse the judgment of the district court insofar as it concluded that Forum's policy

**2.** *See, e.g.,* N.J.Stat.Ann. § 34:15–7 (1988). Currently five states allow election out of workmen's compensation coverage. In New Jersey, South Carolina and Texas, either the employee or the employer may elect out of coverage. In Arizona and Kentucky only the employee may elect out of coverage. *See* A. Larson, 2A *Workmen's Compensation Law*, § 67.10 at 12–95—12–97 (1988).

does not cover the damages awarded in the verdict obtained by Trahey's estate against Allied, and that Liberty's policy does.[3]

I respectfully dissent.

---

**3.** I also have difficulty with Part V of the majority opinion which vacates that portion of the district court's decision requiring Liberty to bear liability for the costs of defense and remanding for apportionment between both insurers. The basis of the majority's ruling is its apparent conclusion that insurance companies have a duty to defend an insured even in a case in which the complaint against the insured does not state a cause of action that is the type covered by the insured's policy, as long as the insured's policy could (albeit incorrectly) be construed to cover that type of action. Pennsylvania law may well be inconsistent with the majority's position. *See generally Cadwallader v. New Amsterdam Casualty Co.*, 396 Pa. 582, 589, 152 A.2d 484, 489 (1959) (" 'It was the duty of the defendant to undertake the defen[s]e until it could confine the claim to a recovery that the policy did not cover.' " (citation omitted)); *Wilson v. Maryland Casualty Co.*, 377 Pa. 588, 594, 105 A.2d 304, 307 (1954) ("[T]he obligation of a casualty insurance company to defend an action brought against the insured is to be determined solely by the allegations of the complaint in the action, and ... the [insurance] company is not required to defend if it would not be bound to indemnify the insured even though the claim against him should prevail in that action."); *Acands Inc. v. Aetna Cas. and Sur. Co.*, 764 F.2d 968, 975 (3d Cir.1985) ("[T]he insurer 'is not required to defend if it would not be bound to indemnify the insured even though the claim against [the insured] should prevail.' " (quoting *Wilson*, 377 Pa. at 594, 105 A.2d at 307)); *State Auto Ins. Ass'n v. Kuhfahl*, 364 Pa.Super. 230, 234, 527 A.2d 1039, 1040–41 (1987) ("In analyzing whether the insurer has a duty to defend, we must first look to the complaint filed against the insureds.... 'After discerning the facts alleged in the complaint, we must then decide whether, if those facts were found to be true, the policy would provide coverage. If it would, then there is a duty to defend.' " (citations omitted)). It may also be that the broader duty to defend attaches under Pennsylvania law only when it is not entirely clear as a matter of law at the outset of the case whether there is a duty to indemnify. If so, the majority may have reached the correct result. Under these circumstances, and in light of the paucity of Pennsylvania law directly addressing this point and the failure of the parties adequately to brief this issue, I will not dissent from Part V of the majority's opinion.